## WARNER v NATIONAL LIBERTY INSURANCE CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 4, 1932

David Haynes, Youngstown, and William E. Pfau, Youngstown, for plaintiff.

H. N. George, Youngstown, and Harmon,

Colston, Goldsmith & Hoadly, Cincinnati, for defendant.

**ROBERTS, J.**

Another matter, perhaps of no great importance but indicative of the lack of knowledge or recollection of Mr. Clair, is the fact that before the loss by fire it was discovered that there had been three mistakes made in the original policy, one in the middle initial of the insured, another in the description of the main road from which the building was located some three hundred feet distant, and the distance from the road. These inaccuracies were corrected by the company later by endorsement. The answer of the, defendant company, is quite voluminous and time will not be taken to go into its allegations in detail. It is sufficient to say, however, that the first defense is a denial of liability on the policy for the reasons stated, that the company claims to have insured only dwelling house property and this was restaurant or inn property. The second defense is that the limitation of time for the commencement of an action under the conditions of the policy had expired before the first amended petition was filed, when for the first time the cause of action was inserted, asking for reformation of the contract that it may speak the actual contract entered into between these parties.

This provision is found in the policy:

"No suit or action on this policy for recovery of any claim shall be sustained in any court of law or equity until after full compliance by the insured with all of the foregoing requirements, nor unless commenced within twelve months next after the fire."

The action was originally commenced within twelve months when a recovery was sought for the loss. More than twelve months had elapsed from the date of the fire to the filing of the amended petition which first contained a cause of action for reformation, and it is claimed, therefore, that this action was not commenced upon this cause of action within the twelve months provided for in the policy. No question is made but that a limitation clause of this nature entered into between the parties by the terms of the policy is valid and enforceable in its proper application. Attention is directed, however, to the wording of this provision, "No suit or action on this policy for recovery of any claim shall be sustained," and so forth "unless commenced within twelve months next after the fire." This cause of action against which the defendant claims the contract of limitation had run is clearly not for a recovery upon the policy, but simply for a reformation of the insurance contract, that it may speak the actual contract entered into between the parties.

The conclusion is therefore reached that this second defense is not well taken. Counsel in support of this claim cite the case of **Appel v Cooper Insurance Co., 76 Oh St, 52,** where the legality of such a clause was recognized, but a reference to that case shows it was simply a general application of this restriction of time for the commencement of an action for recovery for loss and not the question of the reformation of a contract, so that that decision has no application to the issue here.

The other cause of action relates to and raises the proposition as to whether this property described as it was in the insurance policy was the result of a mutual

mistake between the parties and therefore subject to reformation. As has been suggested, there is no conflict between Wagner, the soliciting agent of the local corporation, and the plaintiff as to what the real contract was. It is sought in brief and by allegations of the answer to establish the proposition that Mr. Wagner was not the agent of the Insurance Company, defendant herein, and that it is not bound by Wagner's knowledge. §9586 GC reads as follows:

"A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party, company or association thereafter issuing a policy upon such application, or a renewal thereof, anything in the application or policy to the contrary notwithstanding."

In the case of **Insurance Company v Williams, 39 Oh St, 584,** the syllabi reads:

"A soliciting agent procuring for an insurance company risks and applications on which policies are issued, who fills up the application, is in so doing the agent of the company and not of the insured; and if the agent made a mistake in not stating facts which were correctly given him by the insured in preparing the application, the company is bound by and responsible for such mistake."

It may readily be observed that if a distinction could be made or should be recognized in law between the agent of the company, in this case the Davis-Clair Company, and its responsibility to the insurance company and their soliciting agent, that an unfair situation would develop. To illustrate, this man Wagner, the soliciting agent, had been soliciting insurance and did all the work of his agency and was familiar with the contract that was actually made on the property to be insured, and in such case, as the agent, his knowledge would bind the company. So would the knowledge of the Davis-Clair Corporation itself bind its principal, the insurance company, but in large companies, such as the Davis-Clair Company evidently is, but very little, if any, of the actual soliciting, the taking of applications, the preliminary work, would be done by the officers of the corporation, and if they were not responsible, or the insurance company was not responsible for the knowledge of the soliciting agent, then it would be very seldom that responsibility could be placed upon the company, because only the soliciting agents would have knowledge of these preliminary facts, and the company, under such situation, if that rule was recognized, would not be responsible.

The case of **Humboldt Fire Insurance Company v R. K. LeBlond Machine Tool Company, 96 Oh St, 442,** is referred to, and the syllabi reads:

"By the provisions of §9586, GC, a person who solicits insurance and procures the application therefor shall be held to be the agent of the company thereafter issuing a policy on such application, anything in the application or policy to the contrary notwithstanding. If a policy, written by one who is an agent within the meaning of the section referred to, is delivered and accepted, which by mutual mistake of the parties insufficiently describes the place in which the property is located, the court will, when the mistake is shown by clear and convincing proof, reform the policy so as to state the contract actually made."

Referring now to the case of **Foster v Scottish Union & National Insurance Company of Edinburg, 101 Oh St, 180,** it is said in the syllabus:

"The knowledge of the agent of a fire insurance company as to the title by which property is held, with respect to which property the agent acting within the scope of his apparent authority procures the issuance of a policy of fire insurance, is imputed to his principal, and is in law the knowledge of such principal.

An insurance company is deemed to know matters pertinent to the insurability of property upon which it issues a policy of fire insurance, when such matters were in fact known to its agent at the time the latter procured the insurance.

As to such matters so known to such agent, the insurance company is deemed to have knowledge, notwithstanding a clause in the policy provides that no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except by agreement endorsed hereon or added hereto."

The cases just cited are recognized and approved in the 123 Oh St, 617. That volume is not available at this time, but the case may also be found in the 176 NE Rep., 447.

It may be interesting further to refer to the general rule as to the responsibility of

a principal for the knowledge or conduct not only of an agent, but also of a sub-agent. I read from 2 C. J., 690:

"A sub-agent appointed by the express or implied authority of the principal becomes the agent of such principal, provided the instructions of the principal are complied with in the appointment of the sub-agent, and if the principal has either expressly or impliedly assented to the sub-agent's employment, which assent may be implied from slight circumstances, he is liable for such sub-agent's acts within the course of his employment; this result also follows where the principal has expressly or impliedly ratified the appointment of the sub-agent. But, eo converso, the acts of a sub-agent will not bind the original principal if the appointment of such sub-agent was not by authority expressed or implied, or was not afterward ratified by the principal."

There is no question made in the briefs or pleadings, or otherwise, in this case, but what the Davis-Clair Corporation was the agent of the insurance company, defendant, and that Wagner was the soliciting agent of the insuring agents. Furthermore, however, if there be any question as to the correctness of a holding of responsibility on the part of the insurance company for the knowledge of Wagner, the soliciting agent, then we may briefly consider the evidence in relation to this proposition, and it has already been stated to some extent, the knowledge and testimony of Wagner and of Warner as to the knowledge of not only Wagner but of Clair.

Reference will be made to one other witness in this connection. David Haynes, an attorney who prepared the proofs of loss after the fire, met Mr. Clair, representing his insurance agency, and had some conversation with him regarding matters relating thereto, and commencing on page 56 of the record the following appears:

"Q. What was the conversation you had with Mr. Clair?

A. I went to him, among other things, to learn why he thought that the company hadn't paid and why they should not pay, and also as I learned we would have to file suit on it. Another thing, I tried to get an exact duplicate of the insurance policy in order that we might file it as an exhibit. He was unable to get it by reason of the fact that all policies were numbered and he would be compelled to account for each and every policy in their numerical order. Then I had quite a conversation with him about this insurance. He told me about having gone down to Petersburg, in company with Mr. Wagner, who had solicited it, but didn't rate it because of his unfamiliarity with rates, etc.

Q. What conversation, if any, did you have with Mr. Clair with reference to the rate in this case?

A. With reference to the rate?

Q. In this particular situation?

A. Of course this was after the fire had taken place and he had claimed then that he should have charged more, but I would say, if I am permitted to reveal what he said, Your Honor?

COURT: Yes.

A. He did say he at all times knew this was going to be an inn or roadhouse, and that he had gone in there with Mr. Wagner, at Mr. Wagner's request, for he knew what it was going to be, and he was quite perturbed and scared for fear the company would come back on him because of the mistake he had made. He was quite fearful of the outcome, fearing he would get in trouble for it."

In this connection there is no dispute but what Mr. Clair was in this restaurant and ate there several times before the fire, knew of the occupancy, knew how the property claimed to be insured was being used. Taking into consideration positive testimony of Mr. Warner, the plaintiff, that of Wagner, the soliciting agent, and the admissions of Mr. Clair, made to a reputable attorney, who testified here without interest in this transaction positively as to Clair's admissions of knowledge, we think that a mistake, mutual in its nature, has been clearly and convincingly established under the requirements of the well recognized rules for the recognition of mistakes as being susceptible to reformation. It might be suggested further, without any unfairness, presumably, to Mr. Clair, that his denial of recollection, as to very meager matters which he admits himself to have remembered, things that he saw or knew, in view of the fact that he went out there for the purpose of fixing rates on the property, becoming acquainted with it in its nature, is rather remarkable and detracts from weight which might otherwise have been given to his testimony. It is claimed by the defendant that the premium charged was only about one-third of what the plaintiff had been paying on other restaurant property and should have apprised him

that he was not paying for restaurant insurance. This suggestion has some force. The plaintiff says he did not read the policy but laid it away. This is usually the case.

There isn't any dispute between the parties in citations of authorities as to the conditions under which a contract may be reformed, and time will be taken to cite only one authority, **Stewart v Gordon, 60 Oh St, 170**, which is cited by the Insurance Company. It is said in this report:

"The doctrine on this subject is accurately stated by Bispham in his work on Equity, §469. He says 'A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention, to which he desires it to be made conformable, continued concurrently, in the minds of all the parties, down to the time of its execution; and also must be able to show exactly and precisely the form to which the deed ought to be brought.' He further adds that 'To reform a contract and enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for a reformation in cases of pure mistake, it is necessary that the mistake should have been mutual."

We think that the facts in this case as established by requisite proof meet all the requirements for a reformation of this insurance policy, and the finding of this court is that reformation be made as sought in the petition and as was decreed in the Court of Common Pleas.

FARR and POLLOCK, JJ, concur in the judgment.