MERRILL ET AL., APPELLANTS, *v.* CITY OF HAMILTON, APPELLEE.

(No. CA80-12-0143—Decided November 17, 1982.)

*Ms. Sandra Mendel,* for appellants.
*Mr. Lester M. Koehler,* director of law, for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Butler County.

On February 27, 1979, Local 475 of the American Federation of State, County and Municipal Employees

(hereinafter "Local 475") ratified an agreement between it and the city of Hamilton. This collective bargaining agreement contained terms of employment for the membership of Local 475 for the years 1979 and 1980. This agreement was reduced to writing and was signed on August 17, 1979.

It is uncontroverted that the negotiations resulting in the agreement ratified by Local 475 on February 27, 1979, included apparent agreement to a "me too" clause which would grant additional benefits to Local 475 if such were negotiated by other unions of city workers. It appears from the record that the city and Local 475 had different ideas as to what the "me too" clause was to have said. The city interpreted the clause as providing for additional benefits for Local 475 whenever all other unions representing city employees received a general wage increase in excess of that negotiated by Local 475. Local 475 interpreted the clause to require the city to grant additional benefits to Local 475 whenever any other union of city employees received any wage or benefit increase.

There was no "me too" clause in the agreement signed by Local 475 and the city on August 17, 1979. Nevertheless, when other city employees received an earlier effective date for their pay increase than that received by Local 475, the city granted to Local 475 that same earlier effective date. The city's labor negotiator notified Local 475 of this action by letter dated March 10, 1979, which letter acknowledged the existence of a "me too" agreement between the city and Local 475.

Sometime later the city reached an agreement with the International Brotherhood of Electrical Workers ("I.B.E.W.") Local 648, providing for special wage increases intended to pay Local 648 workers the same wage increase as that received by their counterparts with Cincinnati Gas & Electric Com-

pany. This resulted in pay increases for electrical workers of varying amounts, all in excess of the nine percent wage increase for 1980 received by Local 475.

Local 475 discovered the additional wage increase for electrical workers sometime in February 1980. The city refused to extend this increase to Local 475 and appellants filed suit on May 13, 1980, seeking a declaration that Local 475 members were entitled to the wage increase granted to the electrical workers. A trial was held on November 10, 1980, after which the trial court rendered judgment for the city. Appellants bring a timely appeal to this court.

Appellants assert the following assignments of error:

"(1) The lower court committed reversible error when it found that the 'me too' clause was not part of the agreement between Local 475 and the City of Hamilton.

"(2) The lower court committed reversible error when it found that the 'me too' clause in Local 475's collective bargaining agreement with the City did not operate to provide Local 475 with wage increases in excess of 9%, parallel to those received by Local 648 from February 9, 1980, to date of expiration of the agreement."

Appellants' action in the trial court for declaratory judgment was essentially an action for reformation of the written contract between Local 475 and the city. The basis for the reformation is alleged to be mutual mistake in the omission of the "me too" clause from the written contract of the parties signed on August 17, 1979.

Ohio contract law provides that reformation of a contract based on mutual mistake is allowed only where there is clear proof that the parties made the same mistake and that both parties understood the contract as the complaint alleges it ought to have been. *Mulby* v. *Dunham* (1927), 29 Ohio App. 51.

In the case at bar, appellants failed to

prove mutual mistake. It is clear from the record below that both parties to the contract believed that there existed between the parties a "me too" agreement. As explained above, however, the evidence presented at trial indicated that each party had a different idea of exactly what the "me to" agreement was to have said. In this situation the trial court had no power to write a new contract for the parties. *Stewart* v. *Gordon* (1899), 60 Ohio St. 170.

Appellants argue, however, that collective bargaining agreements are not to be construed according to ordinary contract principles. Citing cases such as *Transportation-Communication Employees Union* v. *Union Pacific RR. Co.* (1966), 385 U.S. 157, and *Cooperative Street Railway Shop Employees Assn.* v. *New Orleans Pub. Serv., Inc.* (E.D. La. 1972), 352 F. Supp. 1100, appellants argue that oral agreements and surrounding negotiations should be considered in construing a collective bargaining agreement.

Accepting this position, *arguendo,* we still find that appellants failed to prove their case. Again, appellants proved that a "me too" agreement was contemplated between Local 475 and the city but they did not prove that any particular "me too" agreement existed. Letters were introduced into evidence showing that the city was willing to extend the benefits of any general wage increase to Local 475. Further, the proffered evidence of the contract between the city and the International Association of Firefighters, Local 20, a contract which should have been admitted into evidence if one accepts the theory of *Transportation-Communication Employees Union, supra,* showed that the firefighters were entitled to "me too" benefits only in case of a general wage increase to all other city employees. Local 475 argued that agreement with appellee had been reached on a more expansive clause.

Therefore, on either a normal contract analysis or on the type of collective bargaining agreement analysis prescribed by *Transportation-Communication Employees Union, supra,* appellants failed to prove that Local 475 and the city had actually agreed upon a particular "me too" clause. The contract cannot be reformed under these circumstances. The assignments of error are overruled.

All assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., and JONES, J., concur.

KOEHLER, J., dissents.

KOEHLER, J., dissenting. The record demonstrates the intention of the parties to include a "me too" provision in the bargained contract. The appellee acknowledges that such a clause was omitted from the document drafted by the city and ultimately executed.

The majority has concluded that the reformation of the contract as requested by appellants by the addition of the "me too" provision requires a showing of mutual mistake, a doctrine only available to appellants if the evidence established a "meeting of the minds" as to the terms of that provision. This court has affirmed the trial court's finding that the appellants failed to carry this burden.

Appellee argues that there was no meeting of the minds, it being the city's intention that Local 475 would receive a wage increase only if *all* employees of the city received a general wage increase, and that the minimum nine percent increase in wages received by members of the I.B.E.W. was not a general increase as contemplated by the city.

Appellants contend that the purpose of the inclusion of a "me too" clause in the

contracts with the city with the various bargaining units was to require that if *any* of the bargaining units obtained a general increase in wages for its members, then the appellants are entitled to a similar increase.

The nature and effect of inclusion of "me too" provisions in multiple bargained contracts mandates such an interpretation. The appellee's position and the court's decision are based upon a distinction of terms where no real difference exists.