SNEDEGAR, ADMX., APPELLANT, *v.*
MIDWESTERN INDEMNITY COMPANY
ET AL., APPELLEES.

(No. 87AP-465—Decided
February 18, 1988.)

*Bradley & Farris Co., L.P.A.,
Richard D. Topper;* and *Christopher J.
Minnillo,* for appellant.

*Lane, Alton & Horst* and *Karen
Krisher Rosenberg,* for appellee Midwestern Indemnity Co.

*Earl, Warburton & Adams* and
*Thomas L. Davis,* for appellee Hartford Accident and Indemnity Company.

HOFSTETTER, J. This is an appeal
from the Franklin County Common
Pleas Court's denial of appellant's partial summary judgment motions
against appellees and granting of the
summary judgment motions of appellee Midwestern Indemnity Company
and appellee Hartford Accident and Indemnity Company.

Appellant, Phyllis L. Snedegar, is
the administratrix of the estate of her
deceased son, Cam Michael Whalen.
Cam was struck by a hit-and-run driver
on January 6, 1984 and died on January 7, 1984 at thirteen years of age.
Appellant states in her affidavit that
Cam was struck by a car driven by an
uninsured motorist when Cam was returning to appellant's Pontiac after
telephoning his stepfather from a pay
telephone to tell his stepfather that the
car had mechanically malfunctioned.
She also states that Cam's stepfather
arrived at the scene driving his company car, a Lincoln Town Car, shortly
after Cam had been hit. As administratrix of Cam's estate, appellant then
brought a declaratory judgment action
against appellee Midwestern Indemnity Company and appellee Hartford
Accident and Indemnity Company for
a declaration of the rights of the decedent's estate and the wrongful death
beneficiaries under the uninsured
motorist coverage of the two separate
auto insurance policies issued by appellees.

The Midwestern auto policy was
purchased by Cam's natural father,
James Whalen. Appellant requested in
her action a declaration that Cam was
an insured under the Midwestern
policy, that Cam's estate should
receive survivorship benefits and that
Cam's beneficiaries should receive
wrongful death benefits.

The Midwestern policy, submitted
with the pleadings, affords protection
under uninsured motorist coverage

"for bodily injury which an insured person is legally entitled to recover." The policy defines an "insured" to include "a relative." A "relative" is defined as "a person living in your household related to you [the named insured or spouse living in the same household] by blood, marriage, or adoption including a ward or foster child." An insured also includes "[a]ny person for damages that person is legally entitled to recover because of bodily injury to you [the named insured or spouse living in the same household], a relative or another occupant of your insured car."

According to the record, Cam's natural mother, appellant, and natural father, James Whalen, were divorced in 1975 when Cam was four years old. Appellant was awarded custody of Cam and his sister. Cam lived with his mother since 1975 and beginning in 1977, when his mother remarried, he also lived with his stepfather, William Snedegar. James Whalen also remarried to Michele Whalen and appellant asserts that in addition to being a member of the Snedegar household, Cam was a member of the Whalen household.

Although the dissolution decree only provided that Mr. Whalen receive biweekly visitation, according to the affidavits and interrogatories submitted, Cam stayed at the Whalen house approximately one to two nights a week. Mr. Whalen and appellant state that Cam had his own room at the Whalen home, he kept clothing and other belongings there, he received some mail and telephone calls there, and Mr. and Mrs. Whalen participated in many activities with Cam. Appellant states in her interrogatories that the dissolution decree required Mr. Whalen to pay $25 per week support for Cam (plus a five-percent increase each year from the date of dissolution), to pay Cam's health insurance and half of Cam's other medical and dental expenses, to pay $100 a year to a joint savings account for Cam, and to maintain a life insurance policy with Cam as the beneficiary. The affidavits and interrogatories also indicate that Mr. Whalen purchased some clothing, toys and educational items for Cam. According to appellant's answers to interrogatories, Cam's address for school and church purposes was the Snedegar residence and he spent five to six days a week in the Snedegar household.

Midwestern has not disputed the facts as stated by appellant, nor are the Midwestern policy provisions in dispute. Midwestern has also agreed that as insureds, James and Michele Whalen may recover uninsured motorist coverage under the policy to the extent of their legal entitlement. However, Midwestern moved for summary judgment asserting that, according to the legal interpretation of the policy provisions, Cam was not an insured because he was not living in the Whalen household; therefore, his estate and the other beneficiaries cannot recover damages under the policy. The trial court granted Midwestern's motion for summary judgment and denied appellant's partial motion for summary judgment against Midwestern as it pertained to coverage for Cam Whalen's estate and the beneficiaries other than Mr. and Mrs. Whalen.

The Hartford auto policy in question, which was submitted with the pleadings, was purchased in the name of William Snedegar, Cam's stepfather. According to affidavits submitted, Diamond Energy leased a Lincoln Town Car for Mr. Snedegar's business and personal use as a part of Mr. Snedegar's employment benefits. Diamond Energy paid the rental and insurance payments and Mr. Snedegar paid to maintain the auto.

The Hartford policy provides unin-

sured motorist coverage to family members of the named insured and occupants of the Lincoln Town Car. Appellant contended in her declaratory judgment complaint that there was a mutual mistake made as to whom the parties intended the named insured to be; that instead of Diamond Energy the intent was to make the named insured William Snedegar. In her declaratory judgment action, appellant requested reformation of the contract to show the named insured as William Snedegar. Because Cam was a family member of the Snedegar household, appellant asserted in her declaratory judgment action that Cam's estate and beneficiaries would be entitled to damages under the uninsured motorist coverage of the policy. Hartford, however, contended in its summary judgment motion that there was no mutual mistake in making Diamond Energy the named insured and that as business auto insurance the policy does not protect William Snedegar's family members, in this case Cam, when they are not occupying the car.

Darrough Diamond, the Chief Executive Officer of Diamond Energy, stated in his deposition that during a telephone conversation he told the certified Hartford agent, who was employed by an insurance brokerage firm, that the insurance on the Lincoln was to provide coverage for William Snedegar's business, personal and family use. The Hartford agent stated in his affidavit that he believed the intent was to make Diamond Energy the named insured. Hartford's underwriter also stated in his affidavit that the intent was to make Diamond Energy the named insured. The computerized declarations page for the policy, submitted with the pleadings, shows that the Lincoln is to be used for personal use, in addition to business use. The Hartford binder and policy listed Diamond Energy as the named insured, although Darrough Diamond stated that the did not read the policy when he received it. A letter from the Hartford agent to Darrough Diamond, attached to Mr. Diamond's deposition, also advised Diamond Energy to place a statement in the corporation minutes regarding the employee to which the auto would be assigned and regarding the auto's use (including use by an employee's spouse and dependents). Appellant asserts that Hartford knew that William and Phyllis Snedegar were the principal drivers of the Lincoln because they completed driver information sheets which were given to Hartford. Appellant has attached these driver information sheets to the complaint.

The trial court sustained Hartford's summary judgment motion and overruled appellant's partial motion for summary judgment against Hartford.

Appellant has timely appealed the trial court's decision granting Hartford's and Midwestern's summary judgment motions and overruling appellant's partial summary judgment motion against Midwestern. Appellant has not appealed the trial court's overruling of appellant's partial summary judgment motion against Hartford. On appeal, appellant asserts the following assignments of error:

"I. The trial court erred in finding that Appellant's decedent, Cam Michael Whalen, was not insured under the uninsured motorists provision of his father, James Whalen's automobile insurance policy with the Appellee, Midwestern Indemnity Company and thereby overruling Appellant's motion for summary judgment and granting the motion for summary judgment of Appellee, Midwestern Indemnity Company.

"II. The trial court erred in granting summary judgment in favor of the Hartford Accident and Indemni-

ty Company in that there existed genuine issues of material fact whether the Hartford automobile insurance policy insuring Diamond Energy Corporation should be reformed, on the grounds of mutual mistake, to include William Snedegar, Cam Whalen's stepfather, as a named insured."

In appellant's first assignment of error, appellant contends that Cam Whalen was a relative living in the James Whalen "household"; therefore, Cam was an insured under the Whalen's Midwestern auto policy. Appellee Midwestern argues that Cam could only have been a member of the Snedegar "household" because he lived with the Snedegar's five to six days a week and used the Snedegar address for school and church purposes.

This court in *Farmers Ins. of Columbus, Inc.* v. *Taylor* (1987), 39 Ohio App. 3d 68, 528 N.E. 2d 968, rejected the contention that a child is only a resident, for insurance purposes, of the household in which the child spends the majority of time. The facts in *Taylor* are almost identical to the facts involved in the Midwestern policy under consideration. Similar to the Midwestern policy, the Farmers auto insurance policy in *Taylor* defined an insured to include "a family member" and also "[a]ny person for damages that person is entitled to recover because of bodily injury to * * * a family member * * *." *Id.* at 69, 528 N.E. 2d at 969. "Family member" in the Farmers policy was defined similarly to the definition of "relative" in the Midwestern policy under consideration, as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." *Id.* at 69-70, 528 N.E. 2d at 969. The child in *Taylor* was injured while a passenger in the auto owned by her uninsured mother. The other auto's driver was also uninsured. This court found that the child was an insured under her father's auto insurance because she was a "resident" of her father's household related by blood, even though her mother and father were divorced, she lived the majority of time with her mother, and she only lived with her father on weekends and in the summer. The policy in *Taylor* did not define "resident of your household." Thus, this court found in *Taylor* that the phrase "resident of your household," unless otherwise defined in the policy, "refers to one who lives in the home of the named insured for a period of *some duration or regularity,* although not necessarily there permanently, but excludes a temporary or transient visitor." (Emphasis added.) *Id.* at the syllabus.

The Columbiana County Court of Appeals also found, in a decision similar to *Taylor,* in *Willis* v. *Nationwide Ins. Co.* (Dec. 30, 1986), Columbiana App. No. 86-C-22, unreported, that the daughter of a divorced noncustodial father was a relative living in the father's household; therefore, the daughter was an insured under the father's uninsured motorist coverage. The daughter had been injured while a passenger in a car driven by her mother's boyfriend, an uninsured at-fault driver. The court found that the daughter lived in her father's household because she stayed at her father's house every weekend. Because she was an insured under the policy, the court allowed the daughter to recover for her own injuries and for those damages accrued because of the death of her mother, who was also killed while a passenger in the same auto.

The Supreme Court of Ohio, although faced with a different set of circumstances than those under consideration, discussed the meaning of the term "household" when used but not defined in an auto insurance policy in *Shear* v. *West American Ins. Co.* (1984), 11 Ohio St. 3d 162, 11 OBR 478,

464 N.E. 2d 545. The Supreme Court of Ohio in *Shear, supra,* at 166, 11 OBR at 481, 464 N.E. 2d at 548, stated that the term "household" when not defined in an insurance policy, as herein, "must be given its common, ordinary, usual meaning." The court cited the definition of "household," as found in Webster's Third New International Dictionary as " '* * * those who dwell under the same roof and compose a family: * * * a social unit comprised of those living together in the same dwelling place * * *.' " *Id.* In *Shear* one of the insurance policies involved was in the plaintiff's son's name and, similar to the case *sub judice,* the policy stated as to uninsured motorist protection that " '[r]elatives living in your household also have this protection.' " *Shear, supra,* at 165, 11 OBR at 481, 464 N.E. 2d at 548. The Supreme Court of Ohio in *Shear* found that the plaintiff and the son were living in the same household because they were "part of a family unit * * *," even though the son, who had lived with his father for several years, was emancipated and the father and son were totally nondependent. *Id.* at 166, 11 OBR at 481, 464 N.E. 2d at 549. The *Shear* court stressed, just as this court discussed in *Taylor,* that the nontemporary status of the living arrangement was an important factor.

Applying the criteria used by the Supreme Court of Ohio in *Shear* and by this court in *Taylor* to the undisputed facts of the case *sub judice,* it is apparent that Cam Whalen was a relative living in the James Whalen household. Cam stayed with his father one to two days a week; Cam kept clothing and belongings at the Whalen home on a permanent basis; Cam received mail and telephone calls at the Whalen residence; and Cam, his father and his stepmother participated in many activities together. Thus, Cam, his father and his stepmother were "part of a

family unit" and this living arrangement had been permanent and on a regular basis for several years. Cam was not precluded from being a member of the Whalen household because he was also a member of the Snedegar household. As discussed in *Taylor, supra,* a child can have more than one residence for certain purposes such as insurance coverage. See, also, *Board of Edn.* v. *Dille* (1959), 109 Ohio App. 344, 11 O.O. 2d 139, 165 N.E. 2d 807 (holding that a child can have two residences for school purposes, although only one legal domicile); and *Hartford Cas. Ins. Co.* v. *Phillips* (Tex. Civ. App. 1978), 575 S.W. 2d 62. Cam's living arrangement in the Whalen household was such that Cam was a "relative" as defined in the Midwestern policy because he was a person *living* in the Whalen household related to the named insured, Mr. Whalen, by "blood." As a "relative," according to the policy provisions, Cam was also an insured under the Midwestern policy; therefore, Cam's estate may recover survivorship damages from Midwestern. Upon proper proof, Cam's beneficiaries who are relatives may also be able to recover damages from Midwestern due to Cam's death because of the policy provision which states that an insured also includes "[a]ny person for damages that person is legally entitled to recover because of bodily injury to * * * a relative * * *."

Other Ohio cases discussing uninsured motorist coverage for the injury of a child not living full-time with the insured parent are distinguishable from the present case. In *Sexton* v. *State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St. 2d 431, 23 O.O. 3d 385, 433 N.E. 2d 555, and *Motorists Mut. Ins. Co.* v. *Speck* (1977), 59 Ohio App. 2d 224, 13 O.O. 3d 239, 393 N.E. 2d 500, the courts on appeal were not asked to determine whether the child was an in-

sured under the divorced parents' auto insurance policy. Instead the courts were only requested to determine the rights of the parents as insureds to recover damages under the uninsured motorist provisions of their respective policies for the wrongful deaths of the children.

*Napier* v. *Banks* (1969), 19 Ohio App. 2d 152, 48 O.O. 2d 263, 250 N.E. 2d 417, cited by appellee Midwestern, is also distinguishable from the case at bar. In *Napier,* the court found that the emancipated divorced daughter of the insured, who was living with the insured at the time of her accident, was not a member of the same "household" as the insured when the evidence showed that the daughter was only *temporarily* residing in the insured's house until she could make other living arrangements. Thus, the daughter did not fulfill the requirements stated in *Shear* and *Taylor* that the relative's living arrangement in the household be for some duration or regularity.

For the foregoing reasons, appellant's first assignment of error is sustained, and the trial court's decision granting summary judgment to appellee Midwestern and overruling appellant's partial summary judgment motion against Midwestern is reversed, based on the law as applied to the undisputed facts in this case.

In appellant's second assignment of error, appellant contends that the trial court erred in granting summary judgment to Hartford because there existed genuine issues of material fact on whether the Hartford auto policy insuring Diamond Energy Corporation should be reformed, on the grounds of mutual mistake, to include William Snedegar as a named insured.

Ohio law regarding *mutual mistake* in the formation of a contract requires that the contract provision in question be contrary to the understanding of all of the contracting parties. *Merrill* v. *Hamilton* (1982), 9 Ohio App. 3d 111, 9 OBR 174, 458 N.E. 2d 860; *Spitzer Hardware & Supply Co.* v. *Dever* (1967), 11 Ohio App. 2d 6, 40 O.O. 2d 4, 227 N.E. 2d 660. In *Merrill,* the court stated:

"Ohio contract law provides that reformation of a contract based on mutual mistake is allowed only where there is clear proof that the parties made the same mistake and that both parties understood the contract as the complaint alleges it ought to have been." *Id.* at 112, 9 OBR at 175, 458 N.E. 2d at 861.

Ohio courts have also held that in case of a mutual mistake in an insurance policy, the policy may be reformed if such mutual mistake is established by clear and convincing evidence. *Shear, supra; Ohio Farmers Ins. Co.* v. *Clinton Cty. Natl. Bank & Trust Co.* (C.P. 1964), 8 Ohio Misc. 226, 37 O.O. 2d 206, 220 N.E. 2d 381, and (1965), 8 Ohio Misc. 228, 37 O.O. 2d 208, 220 N.E. 2d 381.

A contract of insurance may also be reformed or rescinded; however, where a unilateral mistake affects the insurance policy to such an extent that the contract is not "a correct integration of the agreement of the parties," reformation is a proper remedy.[1] *Clinton Cty. Natl. Bank, supra,* at 233, 37

---

[1] *Clinton Cty. Natl. Bank* is similar to the case *sub judice* in that the plaintiff received the insurance bond which contained the mistake but the plaintiff did not read the bond, just as Diamond Energy herein failed to read the Hartford insurance policy upon receiving it. Another important similarity between the cases is that in *Clinton Cty. Natl. Bank* the plaintiff apparently filed the complaint alleging mutual mistake, as in the present case; however, the court allowed the contract reformation on a theory of unilateral mistake.

O.O. 2d at 210, 220 N.E. 2d at 386. The Clinton County Court of Appeals affirmed the common pleas court's decision in *Clinton Cty. Natl. Bank* to reform a banker's bond where the insurance coverage under the bond included certain forgery coverage which was not in accordance with a prior agreement of the parties, even though the mistake was unilaterally made by the insurer. The court stated at 227, 37 O.O. 2d at 207, 220 N.E. 2d at 382 that:

"Where one party believes the writing correctly integrates the agreement and the other knows it does not, reformation may be a proper remedy, even though the mistake of writing the contract was not a mutual one."

Cases from Ohio and other jurisdictions have also allowed reformation of an insurance policy where it was specifically shown that the unilateral mistake was made with the knowledge of, or due to the negligence or inadvertence of, the insurance agent or insurer. In *Warner* v. *Natl. Liberty Ins. Co.* (App. 1932), 13 Ohio Law Abs. 235, the court allowed reformation of the policy when the agent insured a restaurant as a residence even though the agent knew the property was used as a restaurant. In *Harris* v. *Columbiana Cty. Mut. Ins. Co.* (1849), 18 Ohio 116, the court held that the insured was also entitled to have an insurance policy reformed when the agent wrote in the application that the insured owned unencumbered the property to be insured, after the insured told the agent that he only held an equitable title to the property. For similar decisions from other jurisdictions, see *Phoenix Indemn. Co.* v. *Marquette Cas. Co.* (C.A. 5, 1963), 320 F. 2d 486 (the court reformed the policy when the agent failed to change the named insured from an individual to that person's newly formed corporation); and *Dixie Auto Ins. Co.* v. *Safeco Ins. Co. of America* (1974), 292 Ala. 358, 294 So. 2d 736 (the court reformed the policy to make the son the named insured, even though the insurer intended the mother to be the named insured, because the insurer knew that the son drove the car one hundred percent of the time).

The most similar Ohio case to the present case is the Supreme Court of Ohio's decision in *Shear, supra.* In *Shear,* a company was the named insured in one of the auto policies under consideration and the auto insured was leased by the company. The evidence showed that the company's employee, Shear, signed the lease agreement, paid the insurance and maintenance on the car, was the sole driver of the car and had control of the car at all times, and Shear was the named insured on the original insurance application. Shear, while a pedestrian, was struck by a vehicle driven by an uninsured motorist and Shear asserted uninsured motorist coverage under the policy. The Supreme Court of Ohio upheld the trial court's decision to reform the contract to include Shear as a named insured on the ground of mutual mistake, even though the insurer contended that there was no mutual mistake and the policy was only to protect Shear while he was occupying the company car.

Pursuant to the Ohio Supreme Court's holding in *Shear,* the fact that Hartford in the case at bar asserts there was no mutual mistake as to the designation of the named insured does not preclude a factual finding that such a mutual mistake was made and that the policy should be reformed. In the case at bar there is some evidence presented by each party as to that party's contention of the mutual agreement. In addition, as discussed in *Clinton Cty. Natl. Bank, Warner* and *Harris,* Ohio law allows a court to reform an insurance policy when there has

been only unilateral mistake upon the part of the agent or insurer if the contract does not integrate the agreement of the parties. The possibility of unilateral error by the Hartford agent regarding the properly named insured has also been indicated.

Civ. R. 56(C) mandates that summary judgment shall not be rendered unless it appears from all the evidence that there is no genuine issue as to any material fact, that reasonable minds can come to but one conclusion, and that the moving party is entitled to judgment as a matter of law. On a summary judgment motion pursuant to Civ. R. 56(C) the evidence is also to be construed most strongly in favor of the party opposing the motion. Appellant and Hartford each have witnesses who maintain different factual interpretations of who was intended to be the named insured. Therefore, a factual determination needs to be made as to whom the parties intended to be the named insured at the time the policy was formed. This intention remains unclear and is a genuine issue as to a material fact upon which reasonable minds could differ, whether the evidence is construed in appellant's or Hartford's favor; therefore, the trial court was incorrect in granting summary judgment to Hartford.

Hartford also asserts that, despite any alleged mutual mistake, William Snedegar could not be the named insured under the policy because he does not have an insurable interest in the auto due to Snedegar's lack of any ownership interest. Some type of ownership interest is essential to maintaining an insurable interest for purposes of insurance against damage or loss to the vehicle, such as fire, theft, or collision coverage. See 57 Ohio Jurisprudence 3d (1985), Insurance, Section 407. Nevertheless, for purposes of bodily injury coverages, the named insured's insurable interest can be an interest in the safety of those persons who may be injured. See 57 Ohio Jurisprudence 3d (1985), Insurance, Section 409. Thus, William Snedegar would have an insurable interest for bodily injury coverage purposes.

For the foregoing reasons, appellant's second assignment of error is sustained, and the trial court's granting of appellee Hartford's summary judgment motion is reversed. The trial court's overruling of appellant's partial summary judgment motion against Hartford has not been raised on appeal.

Appellant's first and second assignments of error are sustained, and the trial court's decision is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and BRYANT, JJ., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.