OPINION
This matter is the result of a dispute between plaintiff, Millstone Development, Ltd. ("Millstone"), and defendant, Duron, Inc. ("Duron").
In 1997, Millstone commenced construction of the Millstone Lakes apartment complex located in southwest Columbus. That project consisted of the construction of twenty-seven residential buildings, one hundred forty-four apartments, and nine parking garages.
In the fall of 1997, Ralph Williams, a sales manager with Duron, approached Millstone in order to introduce a new incentive program. After a brief initial meeting, Williams prepared a "Builder Partnership Program Agreement," which he then presented to Terrence Connor of Millstone. After the two briefly discussed Williams' proposal, Connor signed the agreement, which contains a provision that the parties refer to as the "marketing allowance" provision. That provision appears in the parties' agreement as follows:[1]
 A per unit marketing allowance of $700 will be paid to Millstone Development for each house painted and sealed entirely with Duron paint products. This portion of the program will be paid in the form of two checks directly to Millstone Development at the end of each six months in the amount of $350 each.
As construction progressed, a dispute arose as to the meaning of the marketing allowance. While Millstone claimed that it was entitled to a $700 allowance for each rental unit painted, Duron argued Millstone was entitled to an allowance of $700 for the entire project. To put this dispute in perspective, Millstone claims that it is entitled to at least $100,800, or $50,400 at the end of two consecutive six month periods. On the other hand, Duron claims that Millstone is entitled to a total of $700, or $350 at the end of two consecutive six month periods.
The dispute came to a head after Millstone received the first $350 payment. Upon receipt, Millstone referred the matter to counsel, who later sent a demand letter to Duron in the amount of $100,800. Duron disputed this amount, and on February 16, 1999, Millstone filed a complaint with the Franklin County Court of Common Pleas claiming damages for breach of contract.
Millstone's complaint was tried between May 22, 2000, and May 26, 2000. At the conclusion of trial, the matter was submitted to a jury, which returned a unanimous verdict in favor of Duron. Thereafter, Millstone filed a motion for new trial. That motion was overruled by the trial court on August 7, 2000. Millstone now appeals raising the following two assignments of error:
 I. The trial court erred when it instructed the jury that it should find that an agreement was never formed between the parties unless the plaintiff-appellant proved that the parties attached the same meaning to the particular provision that was in dispute, even though the contract was in writing, signed by both parties and the plaintiff-appellant had fully performed its obligations under the contract.
 II. The trial court erred when it overruled plaintiff-appellant's motion for a new trial.
Millstone's entire appeal rests upon its challenge to a portion of the jury instructions given by the court. Specifically, Millstone argues that it was error for the trial court to allow the jury to consider the possibility that the parties did not have a "meeting of the minds," and, thus, that no contract was formed. The plaintiff refers to the challenged instruction as the "misunderstanding" instruction. It provides as follows:
 The main issue you will decide in this case is: did the parties agree at any time on the meaning of the marketing allowance provision, or, alternatively, did the parties at all times attach different meanings to that provision. * * *
* * *
 * * * [Y]ou will remember that I said the main issue you will decide in this case is: did the parties agree at any time on the meaning of the marketing allowance provision, or, alternately, did the parties at all times attach different meanings to that provision.
 I have instructed you on how you will proceed if you find that the parties did agree on the meaning of the marketing allowance provision. Now I will instruct you on how you will proceed if you find that the parties at all times attached different meanings to that provision.
 If you find that the parties never reached an agreement on the meaning of the marketing allowance provision and instead attached different meanings to that provision at all times, you will decide whether either party knew or had reason to know of the meaning that was attached to the provision by the other. * * *
 If you find that the parties never reached an agreement and neither party knew or had reason to know of the meaning attached to the marketing allowance provision by the other, then no valid contract was formed and you must find in favor of the defendant.
 If, however, you find that the parties never reached an agreement but one party knew or had reason to know of the meaning attached to the marketing allowance provision by the other, then a valid contract was formed, and the marketing allowance provision will have the meaning asserted by the party who did not know of the other's misunderstanding. [Tr. 423-429.]
Millstone argues that the only proper issue for the jury's consideration was not whether there was a contract, but, rather, how the contract should be interpreted. Millstone supports this position arguing that it introduced evidence of a signed written document, the existence of which was not denied by Duron. Millstone then concludes that a presumption of a meeting of the minds arose, and that the jury should not have been allowed to find in contravention of that presumption.
Evid.R. 301 governs presumptions in the law. It provides:
 In all civil actions and proceedings not otherwise provided for by statute enacted by the General Assembly or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.
A trial court must give jury instructions which are a correct, clear, and complete statement of the law applicable to the case. Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312. In doing so, a judge has discretion to determine whether the evidence presented supports the giving of a certain instruction. Id.; State v. Wolons (1989),44 Ohio St.3d 64, 68. Stated alternatively, if reasonable minds could reach the conclusion sought by a proposed instruction, then the court should ordinarily give that instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. The court need not, however, use the proponent's exact language, but may use its own to communicate the applicable legal principle to the jury. Prejean v. Euclid Bd. of Edn. (1997), 119 Ohio App.3d 793; Youseff v. Parr, Inc. (1990),69 Ohio App.3d 679.
In order to form a valid contract there must be mutual assent, or a "meeting of the minds." Nilavar v. Osborn (1998), 127 Ohio App.3d 1,11-12. There must also be a showing that the contract was definite as to its essential terms. Alligood v. Procter Gamble Co. (1991),72 Ohio App.3d 309, 311.
Where, after parties have apparently agreed to the terms of a contract, circumstances show an ambiguity in the meaning of an essential provision, by which one of the parties meant one thing, and the other a different, the difference going to the essence of the supposed contract, the result is that there is no contract. Stated alternatively, the law, as set forth in Evid.R. 301, specifically provides that the presumption which arose when Millstone introduced the written agreement can be rebutted. Where the evidence shows such a misunderstanding as to the terms of a contract, neither party is obligated in law or equity. Stated simply, in such a case there is no manifestation of mutual assent.
Such an occurrence can occur in cases of mutual mistake or misunderstanding. A mutual mistake or misunderstanding occurs when a material contract provision is contrary to the understanding of the contracting parties. Snedegar v. Midwestern Indemn. Co. (1988),44 Ohio App.3d 64, 69, citing Merrill v. Hamilton (1982),9 Ohio App.3d 111, 112; Spitzer Hardware Supply Co. v. Dever (1967),11 Ohio App.2d 6, 8-9. See, also, Reilley v. Richards (1994),69 Ohio St.3d 352, 353. "A mutual mistake of fact is present where a mistake by both parties as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Pharmacia Hepar, Inc. v. Franklin (1996), 111 Ohio App.3d 468, 478.
A requested jury instruction should be given if it is a correct statement of the law applicable to the facts of the case, and when reasonable minds might reach the conclusion sought by the instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. Thus, in order for Millstone to show reversible error in this instance, it must demonstrate that the instruction given was incorrect, and that the trial court's decision that the evidence supported an instruction on mutual misunderstanding was arbitrary, unreasonable, or unconscionable. Hammerschmidt v. Mignogna (1996), 115 Ohio App.3d 276, 280; Jaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320, 327-328.
In this case, there is no question that the court's instruction on misunderstanding was a correct statement of the law. Instead, Millstone argues that the instruction should not have been given because both parties believed that a contract had been formed, and because Duron never expressly argued that the contract was a sham, illegal, or by some other means invalid.
According to Terrence Connor of Millstone, the initial meeting between himself and Ralph Williams was very brief and concluded with his request for a written proposal. Neither the amount nor the terms of the proposal were discussed. Connor went on to testify that he met with Williams a second time for no more than ten minutes. During this meeting, Connor skimmed the proposal but did not thoroughly read each provision. Importantly, Connor testified that he did not discuss the specific terms of the marketing provision with Williams during the second meeting. Connor also stated that although he considered the marketing provision to be the essence of the agreement, he did not ask, nor was he told by Duron that the marketing allowance was to be in the amount of $700 for the entire contract. Simply, Connor testified that the amount of the marketing allowance was not discussed, and that he believed he was entering into an agreement by which Duron would pay him $700 for each unit he finished with Duron products.
Williams also testified that his first meeting with Connor was very brief. Contrary to Connor's testimony, during their one and only follow-up meeting Williams claims to have told Connor that the marketing allowance would be in the amount of $700 and no more. Williams specifically testified that the "per unit" language contained in the allowance was a mistake, and that he had incorrectly included that language in the proposal given to Connor. Significantly, Williams testified that he believed Connor understood that the proposal was for $700 total, as an incentive program of $100,800 was "not even discussable. That is ludicrous." (Tr. 246.) Indeed, the evidence supports a finding that the marketing allowance, if in the amount of $700 for each unit, would be in excess of the cost of the paint and labor required to finish each unit. In effect, Duron would have agreed to give Millstone all the paint required for the project, as well as pay for the labor required to apply it.
Millstone's argument to the contrary, the evidence introduced at trial supports the jury's conclusion that both parties were mistaken as to the nature and amount of the marketing allowance, and that the marketing allowance was a material provision of the disputed agreement. Because the challenged instruction was a correct statement of the law, and because reasonable minds in this case could reach the conclusion sought by the instruction, we find that the trial court did not abuse its discretion in submitting the instruction to the jury. See Murphy, supra. The trial court correctly determined that the evidence warranted an instruction to the jury regarding mistake or misunderstanding. Accordingly, Millstone's first assignment of error is not well-taken.
In its second assignment of error, Millstone argues the trial court erred when it refused to grant Millstone a new trial. When a party files a motion for a new trial on the grounds that the judgment is not sustained by the weight of the evidence, the trial court must review the evidence in order to evaluate the credibility of the witnesses and the evidence in general. Rohde v. Farmer (1970), 23 Ohio St.2d 82, 92. The trial court is obviously best equipped to decide issues of fact, and is therefore vested with broad discretion in ruling upon Civ.R. 59 motions for a new trial. Berge v. Columbus Community Cable Access (1999),136 Ohio App.3d 281, citing Monroe v. Ohio Dept. of Rehab. Corr. (1990), 66 Ohio App.3d 236, 240. See, also, State v. Matthews (1998),81 Ohio St.3d 375.
An appellate court will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. Sharp, supra. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is undoubtedly more than an error in judgment. State ex rel. Richard v. Seidner (1996), 76 Ohio St.3d 149. Finally, when applying the abuse of discretion standard, the reviewing court must "view the evidence favorably to the trial court's action rather than to the original jury's verdict." Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 448, quoting Rohde, supra, at 94. Viewing the evidence favorably to the trial court's decision, and having reviewed the trial transcript, we find that the trial court correctly concluded that the jury's verdict was supported by competent, credible evidence. None of the trial court's reasons for denying Millstone's motion for new trial are arbitrary, capricious, or unreasonable. Millstone's second assignment of error is also not well-taken.
For the foregoing reasons, both of plaintiff's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ___________________ PETREE, J.
[1] The following language has been reproduced exactly as it appears from the documents of record in this case.