(Cuyahoga County Common Pleas.)

## MIERITZ v. INSURANCE COMPANY.

(1) A fact in controversy in a civil action is proven if the weight of the evidence preponderates in favor of such fact, although there may be doubt about it.

(2) A jury may give to the testimony of a witness much, little, or no weight, in determining which it may take into consideration his intelligence or want of intelligence, his interest or want of interest in the matter testified by him, his manifest fairness or unfairness, the consistency or inconsistency of his statements, and the reasonableness or unreasonableness of what he says.

(3) Common law marriages are valid in Ohio.

(4) Where a man and woman were united by a marriage ceremony, the woman being at the time married to another man, which marriage was shortly afterwards annulled by divorce, although such marriage ceremony was void, if they both believed she was marriageable, and understood that they were then becoming man and wife, and then and thereafter sustained that relation in good faith, they would be legally man and wife from the time of the dissolution of the former marriage.

5. A common law marriage resting upon the agreement of parties and the consummation of that agreement, if not entered into in good faith, or if made for some fraudulent or improper purpose would not make the parties husband and wife.

(6) The fact that, in an application for life insurance, parties falsely represented themselves as husband and wife will not defeat the policy, if at the time they, in good faith, believed themselves to be such.

(7) Such statement, or any false statement made in such application, in order to defeat the policy, must have been wilfully false, and made fraudulently with intent to deceive and mislead the company, and must have been material in the matter of inducing the company to issue the policy.

(8) A material fact, as applied to statements in an application for insurance, is one which if communicated to the insurer, would either induce him to decline an insurance altogether, or not to accept it unless at a higher premium.

(9) A life insurance agent soliciting and

procuring for an insurance company risks, and applications upon which policies are to be issued, who fills up the application, is, in so doing, the agent of the insurance company and not of the insured or of the one making application for the insurance, and if the agent makes a mistake in preparing the application and stating the facts in it, the insurance company is bound by it and is responsible for such mistake.

(10)  The beneficiary in a life insurance policy cannot recover, thereon, if the insured died from the effects of poison administered to him either with or without his knowledge or consent, by such beneficiary.

(11)  If such insured died from the effects of poison, taken by him with the knowledge, or consent of such beneficiary, with the intent to commit suicide for the purpose of enabling the beneficiary to collect from the insurance company the sum of money named in the policy upon his life, the beneficiary cannot recover.

2.  If such insured died from the effects of poison, which was knowingly permitted by such beneficiary either with or without the knowledge or consent of insured to be given to him, with intent on part of such beneficiary to allow the poison to cause his death, such beneficiary cannot recover on the policy.

3.  If a written application for a life insurance policy was made to the company by the insured or by the beneficiary therein named, in furtherance of a conspiracy theretofore entered into between such insured and such beneficiary to cheat and defraud the company either by having the insured simulate death, or commit suicide for the purpose of enabling the beneficiary to collect from the company the sum of money stated in the policy, such beneficiary cannot recover.

4.  If the insured died from the effects of poison taken by him without suicidal intent, but with intent and in the belief that it would enable him to simulate death for the purpose of having the beneficiary named in the policy collect on the policy, such beneficiary cannot recover.

5.  If the insured died from the effects of poison, and while suffering from the effects thereof was under the exclusive care and control of such beneficiary, who was at the time aware that such poison had been given him or taken by him, and that he was then suffering from the effects thereof, and fraudulently intended to permit such poison to cause his death, and neglected to administer to him remedies prescribed by his physician, or concealed from such physician the fact that insured was then suffering from the effects of such poison, such beneficiary cannot recover on the policy.

6.  If such insured died from the effects of poison, and his written application to the insurance company was made, and the poison was either given or caused to be given to, or taken by the insured, or permitted by such beneficiary to be taken by him, in furtherance of a conspiracy entered into by and between such beneficiary and the insured to thereby cheat and defraud the company, such beneficiary cannot recover on the policy.

7.  The testimony of expert witnesses if it fits the facts proved in a case, as to their opinions, is entitled to such weight as is due to their skill, experience and knowledge.

PHILLIPS, Judge.

Gentlemen of the jury:  In this case, as in all civil actions, a fact in controversy is proven if the weight of the evidence preponderates in favor of the alleged facts; that is, if upon consideration of all evidence bearing upon the question the weight of the evidence, no matter by whom introduced, is in favor of the asserted fact, it is proven, otherwise; such fact is not proven.  It follows, that you may find a fact established by proof, although you may have doubt about it.  But if the weight of the evidence does not so preponderate, or if the evidence is evenly balanced, the fact is not proved.

In considering and weighing the evidence you are to give to it such weight and effect as in your judgments it is fairly entitled to. Under this rule, you may give to the testimony of a witness much or little weight, or no weight, and in determining what weight you will give to the testimony of the witness you may take into consideration his intelligence or want of intelligence, his interest or want of interest in the matter about which he testifies, his manifest fairness or unfairness, the consistency or inconsistency of his statements, and the reasonableness or unreasonableness of what he says.  In your deliberations you may differ as to the effect of the evidence upon one issue or another.  In such case, it will be your duty to reason with judgment, to the end that you may arrive at the truth of the matter about which you may differ.  The duty of jurors is to arrive at the truth as to the matters in contention, from the evidence, and under the law as given them by the court.

This action is brought by Wilhelmina Mieritz against the Metropolitan Life Insurance Company to recover four thousand dollars, with interest, on a policy of insurance issued on the life of August Mieritz.  On the 3rd day of August, 1893, the said company issued a policy on the life of August Mieritz for the sum of four thousand dollars, payable to this plaintiff upon the death of said August Mieritz if she should survive him.  All payments of premiums were duly made, and on the 25th of September, 1893, August Mieritz died.  The policy of insurance re-

quired proof of the death of the insured to be made within a certain time after his death, and in a certain particular way, and it is conceded here that such proof of death has been shown in this case. So that, upon that question, you are not required to consider the evidence upon it.

These undisputed facts show a valid contract of insurance between the company and August Mieritz, and a liability of the defendant to the plaintiff as the beneficiary under that contract, unless their effect is defeated or avoided by proof of some one or or more of the defensive claims asserted by the defendant, to which I now call your attention. And as to each and all of these defenses, the burden of proof is upon the defendant. It follows, that by reason of the conceded facts, your verdict should be for the plaintiff, unless some one of more of the defense asserted by the defendant has been proved by a preponderance of the evidence.

The defendant says that certain statements made by plaintiff and said August Mieritz in their written application for insurance were untrue; that they were wilfully false, and fraudulently made; that they were material to the risk, and induced the company to issue the policy; and that neither the company, nor its agent. had any knowledge of the falsity or fraud of said statements. The statute in this regard contains these provisions:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bear the right to recover upon any policy issued upon such application, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false and was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, moreover, that the agent or company had no knowledge of the falsity or fraud of such answer."

So that, to sustain any one of these affirmative defenses, except the defense of death by poisoning, these requirements of the statute that I have read to you must be proved by a preponderance of the evidence. I will further on return of these requirements of the statute and explain them to you *seriatim*.

The deceased and the plaintiff stated, in the application for this insurance, that they were husband and wife. Defendant claims that this statement was untrue. It is conceded upon the trial that when plaintiff came to this country she was the wife of one Grafe, who remained in Germany. It is further conceded that in September, 1892, there was a formal, ceremonial marriage of plaintiff and said Gugust Mieritz performed here, by duly authorized clergyman. The copy of a decree of a German Court that is in evidence here shows that plaintiff's marriage with Grafe was dissolved by that decree on the 18th of March, 1893; that is, it took effect at that date, at which time she ceased to be the wife of Grafe and she was thereafter marriageable.

Marriage in Ohio may be ceremonial, as I will call it for convenience, or it may be by mere agreement and cohabitation, and without ceremony and without license and without the publication of banns., So that in Ohio, a man and a woman that are marriageable may become husband and wife by the official solemnization of a marriage virtue of a license, or after the publication of banns and without a license, or by what is called a common law marriage. If a man and a woman that are marriageable agree between themselves to become husband and wife and they agree to become such at once, and they thereafter continously cohabit as husband and wife, sustain the relation toward each other that is proper only for husband and wife, and hold each the other out in the community as husband and wife, then the law says that they are husband and wife. By such agreement to become at once husband and wife, and by such cohabitation and carrying out of that agreement, they become as legally and validly married as though they were married by official ceremony and by virtue of a license or by the publication of bans. The cohabitation alone would not make them husband and wife, nor would the agreemnt, if not consummated in the way I have stated, make them husband and wife; but it is the agreement entered into at once, and the continued cohabitation in that relation, and the treatment of each other, not only between themselves but in the community, as husband and wife, that makes them such.

If you find that in September, 1892, this plaintiff and the decedent intended and agreed then to become husband and wife, and from that time on to his death cohabited as husband and wife, so treated each other and so held themselves out in the community, they were. from and after March 18, 1893, legally husband and wife; for from that time she was marriageable, and continuance of the relation after that date entered into in September, 1892, in the way and for the purpose I have stated, would be a ratification and a consummation of that agreement. So that, although the official ceremonial and statutory formal marriage in September, 1892, was illegal and void because

on that date she was not marriageable, yet, if you find from the evidence that they both believed she was marriageable and understood that they were then becoming man and wife, and then and thereafter sustained that relation in good faith, then, I say to you, that although she was not then marriageable, that from the time she became marriagable by the dissolution of her former marriage, she and Mieritz would be legally husband and wife.

Of course it is indispensible to a common law marriage, resting upon agreement of parties and the consumation of that agreement in the way I have stated, that the relation and agreement should be entered into in good faith. When it is so entered into and so consummate', it creats the marriage relation with as much legal validity as though created in any other way. But such agreement and such relation, if not entered into in good faith, if so made for some fraudulent or improper purpose, of course would not make the parties husband and wife.

If you find from the evidence, and under the rules that I have stated to you, that these people were husband and wife at the time of the application for this policy, which was in July, 1893, of course that is the end of your inquiry as to this charge of false statement that they were husband and wife. But if you find that they were not husband and wife in July, 1893, then you must inquire further in regard to this charge, did they falsely state that they were husband and wife? Then you must inquire whether the statement made by them that they were husband and wife was wilfully false, was fraudulently made, that it was material, that it induced the company to issue the policy, that the company and the agent who took the insurance were ignorant of the falsity and fraud; for if the statement were untrue, if they were in fact not husband and wife so that the statement in the policy was untrue, still that would not defeat her recovery upon this policy, unless that falsity had the characteristics that I have enumerated and that I will now explain to you.

This statement must have been wilfully false; that is, it must have been intentionally made and not believed to be true. A statement is false if it is untrue, but it may not be wilfully false. To avail the Insurance company in this case, it must appear by a preponderance of the evidence that it was wilfully false, that it was intentionally made, and was not believed by these parties who made it to be true.

It must have been made fraudulently. That is, they must not have believed it to be true, and they must have intended the statement to deceive and to mislead the company. That would make it fraudulent. In addition to being wilfully false and fraudulently made it must have been material; that is, it must have been material in the matter of inducing the company to make the contract of insurance. I will explain to you now what material means in this relation.

A material fact, as applied to statements in an application for insurance, is one which, if communicated to the insurer, would either induce him to decline an insurance altogether, or not to accept it unless at a higher premium. Any fact is material the knowledge or ignorance of which would naturally influence an insurer in making the contract at all or in estimating the degree and character or the risk, or in fixing the rate of insurance.

Then, in addition to being wilfully false, and fraudulently made, and to being material, as I have just explained that to you, it must appear that it induced the company to issue the policy, and that for such answer the company would not have issued the policy. Then it must further appear that both the company and its agent who took the risk, were ignorant of this statement. So that you will understand now, and I am endeavoring to be full and explicit in regard to this because of falsity but as to the other charges of falsity in this application, so that you will understand now, first, that when this application was made they were husband and wife, that is the end of that contention as to the falsity of that statement. It was not false if that was so. But if you find that they were not husband and wife, then it was false because it was untrue. Then, in order that such falsity may avail the company as a defense here, it must appear that it was wilfully false, that it was fraudulently made, that it was material, that it induced the company to issue the policy, and that but for such answer it would not have issued it, and that both the company and its agent were ignorant of the falsity. All these characteristics of the false statement must appear in order to make it available as a defense. And if they do not appear, if the statement was false and had all these characteristics that I have named, then that defeats the plaintiff in this action, in such case your verdict should be for the defendant. But if as to this representation that they were husband and wife, you find for the plaintiff, then you will proceed further with your inquiries. If you find for the defendant upon that question, that is the end of your inquiries, because your verdict should then be for the defendant. But if upon that you find for the plaintiff, then you are to proceed further.

It is claimed by the defendant that the statement in the application that there was at that time no insurance on the life of August Mieritz, was untrue, and that it was wilfully false, was fraudulently made, that it was material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued, and that the agent and company had no knowledge of the falsity or fraud of such answer. Now, as to this claim of the defendant, what I have said as to the statement that plaintiff and decedent were husband and wife, if this representation shall be found to be untrue, is as applicable to this contention as to the former.     That is, if you find that this statement that there was no insurance on his life at that time is untrue, then you will inquire whether the falsity of that statement had the characteristics of wilfulness and fraud and materiality, etc., that I have explained to you in what I have said to you about the representation as to their being husband and wife. If you find that the statement as to insurance n his life at that time was true as they made it, why, then of course that is the end of your inquiry as to that contention; but if you find it was untrue, then you will inquire whether that false statement had these characteristics.     If it did not have all these characteristics, then as to that defense or contention you should find for the plaintiff. If you find that the false statement had all these characteristics, then your verdict should be for the defendant even though find for the plaintiff as to the contention about her marriage.

But the plaintiff claims as to this answer that the statements' were not written in the application as she made them. If, from the evidence, you find that the answers in the application were not the real answers of August Mieritz and Wilhelmina Mieritz, the plaintiff, but that they were the acts of the agent of the defendant, and which the applicants, August Mieritz and the plaintiff, did not understand by reason of their lack of acquaintance with the English language, then you need go no further with the consideration of these matters, because this plaintiff would not be bound by any statement that the agent of the company, by mistake or however inserted in the application, that was not the real answer that she and the decedent made. But if you should find that whatever answers they made were written down correctly by the agent in the application, then it would be necessary to go further and consider whether such answers were wilfully false, and fraud-

ulently made, etc.     I instruct you· that it is the law in this state, that an agent soliciting, and procuring for an insurance company risks, and applications upon which policies are to be issued, who fills up the application, is, in so doing, the agent of the insurance company, and not of the insured or of the one making application for the insurance; and if the agent makes a mistake in preparing the application and stating the facts in it, the insurance company is bound by and is responsible for such mistake.

In what is designated as the fourth defense in the defendant's second amended answer in this case, it alleges, in substance, that August Mieritz did not die from the effects of any disease, but that he did die from the effects of arsenical poisoning; that the poison was taken by said August Mieritz, and that the plaintiff permitted him to take it with the fraudulent intent on the part of both to cheat. Mieritz was under the exclusive care and control of the plaintiff while suffering from the effect of the poison, and that the plaintiff was fully aware that the poison had been given to him, and that the plaintiff thus fraudulently intending to permit said poison to have its full effect and allow it to cause the death of August Mieritz, wilfully and fraudulently refused and neglected to administer to the said August Mieritz such remedies, and adopt such precautions, regarding his food and drink, as were prescribed by such physician as was finally called.     And plaintiff wilfully concealed from such physician the fact that said August Mieritz was then suffering from the effects of poisoning; that for those reasons August Mieritz died, and that the written application made by August Mieritz and the plaintiff for insurance by the policy in this case, was originally made, and the policy originally procured, and the said arsenical poison given, caused to be given, taken, and permitted by the plaintiff to be taken, in furtherance of a conspiracy entered into by and between the plaintiff and August Mieritz to cheat and defraud the defendant in the manner and by the means aforesaid. 

In her reply plaintiff denies all and singular the allegations of the fourth defense.

With respect to this fourth defense, the burden of establishing it, as I have before stated, is upon the defendant.  Now, as to this issue, I give you these several propositions:

If you find that August Mieritz died from the effects of arsenical poison given or administered to him, either with or without his knowledge or consent, by the plaintiff, you will return your verdict for the defendant.

If you shall find that August Mieritz died from the effects of arsenical poison, caused by the plaintiff to be given or administered to him, either with or without his knowledge or consent, for the purpose of thereby causing his death, you will return your verdict for the defendant.

.If you shall find that August Mieritz died from the effects of arsenical poison, and that the said poison was taken by him, with the knowledge or consent of the plaintiff, with intent upon his part to commit suicide for the purpose of enabling the plaintiff to collect from the defendant the sum of money named in its policy upon his life, you will return your verdict for the defendant.

If you shall find that August Mieritz died from the effects of arsenical poison, and that the said poison was taken by him without the knowledge or consent of the plaintiff, but with intent upon his part to commit suicide for the purpose of enabling the plaintiff to collect from the defendant the sum of money named in its policy upon his life, you will return your verdict for the defendant.

If you shall find that August Mieritz died from the effects of arsenical poison, which was knowingly permitted by the plaintiff, either with or without his knowledge of consent to be given to him, with intent on her part to allow the said poison to cause his death, you will return your verdict for the defendant.

If you shall find that August Mieritz died from the effects of arsenical poison, and that the said poison was taken by him, without suicidal intent on his part, but with intent and in the belief on his part that it would enable him to simulate death for the purpose of having the plaintiff collect from the defendant the sum of money named in its policy upon his life, you will return your verdict for the defendant.

If you shall find that the written application for the policy of insurance in suit was made to the defendant by August Mieritz, or that the said policy was by him or the plaintiff obtained or produced from the defendant in furtherance of a conspiracy theretofore entered into by and between the plaintiff and August Mieritz to cheat and defraud the defendant either by having said August Mieritz simulate death or commit suicide for the purpose of enabling the plaintiff to collect from the defendant the sum of money stated in the policy, you will return your verdict for the defendant.

If you shall find that August Mieritz died from the effects of arsenical poison, and also that while suffering from the effects of said poison, he was under the exclusive care and control of the plaintiff; that the plaintiff during the time the said August Mieritz was so under her exclusive care and control was aware that said poison had been given to him or taken by him, and that he was then suffering from the effects thereof, and that the plaintiff, fraudulently intended to permit the said poison to have its full effect upon said August Mieritz, and thereby to permit it to cause his death, and neglected or refused to administer to him the remedies prescribed by the physician who finally called to attend him, or concealed from such physician the fact that the said August Mieritz was then suffering from the effects of said poison, you will return, your verdict for the defendant.

If you shall find that August Micritz died from the effects of arsenical poison, and shall also find that his written application to the defendant for the issuance of the policy in suit was made, and that the said arsenical poison was either given or caused to be given to, or taken by, the said August Mieritz, or permitted by the plaintiff to be taken by him, in furtherance of a conspiracy entered by and between the plaintiff and the said August Micritz to thereby cheat and defraud the defendant, you will return your verdict for the defendant.

If, on the other hand the evidence does not show by a preponderance thereof, that August Mieritz came to his death from poison, taken or given in some such way as would, under the rules I have given you, defeat a recovery by plaintiff, your finding as to this fourth defense should be for the plaintiff.

The fact that the plaintiff committed adultery, if you should find from the evidence that she did commit adultery, while residing in Germany or in Cleveland, would not defeat her right to recover in this case.

The question as to whether plaintiff was a chaste or an unchaste woman at the time the policy was issued is not made an issue in this action; and the fact that she has at some time been unchaste, if such appears, does not affect her right under the policy of insurance sued on.

If it appears that she left any children in Germany, such fact does not enter into the merits of this case, and in no way affects her claim asserted in her action.

Expert testimony has been given you in the trial of this case. The province and purpose of expert testimony is to throw light upon the facts proved in the case, so that you may be assisted in judging of the effect of such facts as, under the rules of law the court has given you, may be reguarded as proved. For this

[COPYRIGHT, 1901, BY CARL G. JAHN.]

reason, men learned in a special science and adapted to explain facts are called as witnesses, and the facts are supposed to them, and they are asked to give their opinion upon such supposed facts. In some instances the facts are known to them, and they disclose the facts themselves and their opinion upon them. In considering this line of testimony, you will first ascertain whether in the facts supposed their answers have been in response to the supposed state of facts, have been proved to you in the case. If not so proved, then you will not consider the supposed testimony based upon the supposed facts. But when the supposition fits the facts, then you are to consider the opinion of these expert witnesses who have testified, and give such weight to their opinions as is due to their skill, experience and knowledge as you may find such experts to be in possession of.

Gentlemen, if you find for the plaintiff, your verdict will be for the plaintiff for four thousand dollars, with interest at the rate of six percent. per annum computed from the twenty-fifth day of November, 1893, to the eighth day of April, 1901, which was the first day of this term. You would compute the interest from November 25, 1893 to April 8, 1901, and add the interest to principal, and put the gross sum in your verdict—do not state the principal and interest, but just the gross sum.

If your verdict should be for the defendant, it would simply be for the defendant not naming any amount.

Two blank verdicts will be furnished and sent to your room, and such other papers as would go to the jury will be sent to the room and taken there by the bailiff.

And thereupon the defendant at the time excepted to the charge generally.