## American Continental Ins. Co.
### v.
### Gerkens
[Cite as 7 AOA 69]

Case No. 11-88-15
Paulding County, (3rd)
Decided October 5, 1990

*Larry S. Kaplan and Michael G. McQuillen, Adler, Kaplan & Begy, 10 North Dearborn Street, Chicago, Illinois 60602, for Appellants.*

*Robert L. Washburn, Cloppert, Portman, Sauter, Latanick & Foley, 225 E. Broad Street, Columbus, Ohio 43215, for Appellants.*

*Richard G. Snell and Richard L. ·Carr, Jr., Rogers & Greenberg, 2160 Kettering Tower, Dayton, Ohio 45423-1001, for Appellees, Estate of William L. Wilhelm and Estate of Martha S. Wilhelm.*

*David Hyman, Hyman Law Offices, 123 North Main Street, Paulding, Ohio 45879, for Appellees, Estate of William L. Wilhelm and Estate of Martha S. Wilhelm.*

*Norman E. Cook, Cook & Troth, 112 North Water Street, Paulding, Ohio 45879, for Appellee, Gerkens.*

MILLER, J.

This is an appeal by plaintiffs, American Continental Insurance Company and Southern Aviation Insurance Group, Inc. from a judgment of the Court of Common Pleas of Paulding County, in a declaratory judgment action.

On May 10, 1985, John Maxcy contacted Dickens Insurance Agency, an independent insurance agent, seeking liability coverage for his Cessna 310 multi-engine aircraft. Speaking by telephone to Terry Campton, an agent with Dickens, Maxcy answered questions concerning his pilot's qualifications and hours of flying time required by insurance underwriters. Maxcy informed Campton that the pilot of the aircraft would be Marvin Gerkins. Gerkins told Maxcy, who in turn informed Campton, that he was a twin engine rated pilot with 400 hours.

Following this conversation, Campton inquired about insurance rates with various insurance underwriters. Campton received a favorable rate from Southern Aviation Insurance Group for $822.00.

Don Barker, assistant vice-president and underwriter for Southern Aviation, spoke with Campton inquiring as to the ownership of the aircraft, the aircraft itself, and its pilot. It was Barker's understanding after the conversation that Gerkins would be the pilot of the aircraft and that he was a private pilot with a multi-engine rating with 480 total hours and 37 multi-engine hours in the make and model of Maxcy's aircraft.

On or about June 25, 1985, a binder was issued by Barker to the Dickens Insurance Agency containing the agreed upon quote as to insurance rates. In addition, the binder also indicated that the aircraft would be piloted by Marvin Gerkins, who was a private, multi-engine rated pilot.

Further, on or about June 25, 1985, Maxcy received an application from Campton for insurance coverage. The application contained a

"Pilot Information" section which requested the name, age, ratings and pilot certificate data of the pilots who would be operating the aircraft. Gerkins completed this section stating that he was a single and multi-engine rated pilot. Maxcy signed the application and returned it to Campton. Maxcy subsequently was issued policy number 28647. The Pilot Clause Endorsement in the insurance policy provided:

"In consideration of the premium at which this policy is issued, it is understood and agreed that Item 17 of the Declaration Page, Pilot Clause, shall read as follows:
"Only the following pilot(s) holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration of the flight involved will operate the aircraft in flight:

"Marvin Gerkins, a Private, Multi-Engine rated Pilot.
"Or any Private or Commercial, Multi-Engine, Instrument rated Pilot who has flown 1500 total logged hours including 500 hours in a Multi-Engine aircraft and 25 hours in the same make and model as the insured aircraft."

On January 18, 1986, the Cessna 310 twin-engine aircraft being flown by Marvin Gerkins crashed and Gerkins and his three passengers were killed.

It is undisputed that at the time of the crash Marvin Gerkins was not a Private, Multi-Engine rated Pilot and had never been issued a pilot certification from the Federal Aviation Administration.

On March 31, 1986, American Continental Insurance Company and Southern Aviation Insurance Group, Inc. filed a complaint for declaratory judgment asking the court to determine that the policy number 28647 issued by American Continental Insurance on June 24, 1985, be held not to cover the accident of January 18, 1986 because decedent Marvin Gerkins was not a licensed pilot as required by the terms of the policy. Named as defendants in the complaint were John Maxcy, the Estate of Marvin Gerkins, the Estate of Kay E. Gerkins, the Estate of William L. Wilhelm, and the Estate of Martha S. Wilhelm.

On May 7, 1986, defendant John Maxcy filed his answer, on May 15, 1986, the Estates of William and Martha Wilhelm filed their answers, and, on May 30, 1986, the Estates of Marvin and Kay Gerkins filed their answers and cross-claims with a jury demand.

The cross-claims alleged that John Maxcy's negligence was the proximate cause of the injuries and death suffered by decedents, Kay Gerkins and Marvin Gerkins.

On July 2, 1986, the Estates of William Wilhelm and Martha Wilhelm filed an amended answer and cross-claims. The cross-claims alleged that the negligence of John Maxcy and Marvin Gerkins was the proximate cause of the injury and death of William and Martha Wilhelm.

John Maxcy filed an amended motion for summary judgment on the cross-claims against him. On April 21, 1987, the court granted summary judgment in favor of John Maxcy and against the cross-plaintiffs.

Further, on October 19, 1987, the parties stipulated that the trial of the plaintiffs' original complaint was to be severed from the trial on the cross-claims.

On October 26, 1987, the trial court, ruling on whether the plaintiffs are entitled to a jury trial, found in its Journal Entry the following:
"It having come to the Court's attention that it had erroneously been proceeding under the belief that a jury demand had been filed on the issues raised by the plaintiffs' complaint; and, the court having received the complete file herein and ascertained that the only jury demand filed herein was the jury demand filed by the defendant, Rex Williamson, the Executor of the Estates of Marvin L. Gerkins and Kay E. Gerkins, for a jury trial on all issues raised in his cross-claims; and, 'the Court further finding that even had a jury demand been made on the issues raised by the original complaint herein, that the parties are not entitled to a trial by jury in a declaratory judgment action filed by an insurer against an insured for the purpose of construing an insurance policy in determining the insured's obligations to the insured. (See *Erie Ins. Group v. Fisher,* 15 Ohio St. 3d 380.)
"*** "

On January 27, 1988, plaintiffs American Continental Insurance Company and Southern Aviation Insurance Group filed an amended complaint for declaratory judgment requesting the court to declare that the policy of insurance issued to John Maxcy be rescinded and voided on the grounds that Marvin Gerkins had practiced fraud or misrepresentation with regard to his qualifications.

The trial court in its April 26, 1988 Journal Entry set forth the following conclusions of law:

"1. To avoid coverage for a named insured, plaintiff insurer has the burden of establishing by a preponderance of the evidence that the breach of the policy terms was a proximate cause of the occurrence giving rise to the claim.

"2. Plaintiffs, having failed to prove by a preponderance of the evidence that Marvin Gerkins' lack of appropriate certification and rating as a pilot was a proximate cause of the crash, must fail in their effort to have a declaration that the insurance policy does not cover the accident in question."

Plaintiffs appeal setting forth four assignments of error.

Assignment of error number one:
"THE LAW OF OHIO DOES NOT REQUIRE AN INSURER TO PROVE A CAUSAL CONNECTION BETWEEN A BREACH OF A POLICY CONDITION OR EXCLUSION AND THE LOSS AT ISSUE TO AVOID COVERAGE."

Assignment of error number two:
"THE TRIAL COURT'S CONCLUSION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE GERKINS' LACK OF QUALIFICATIONS WAS DIRECTLY RELATED TO THE CAUSE OF THE ACCIDENT."

Assignment of error number three:
"THE TRIAL COURT ERRED IN NOT VOIDING THE POLICY FOR FRAUD AND MISREPRESENTATION IN THE APPLICATION."

We will address plaintiffs' assignments of error in the following order:

We will first consider plaintiffs' contention that the trial court erred in not voiding the insurance policy for fraud and misrepresentation in the application for insurance where the pilot represented to the insurer that he was a private and multi-engine rated pilot when in fact he had never held such a license.

Secondly, we will consider plaintiffs' contention that the trial court erred in requiring them to prove that a causal connection existed between Gerkins' lack of proper certification and the accident.

Lastly, we will consider plaintiffs' contention that the trial court's ruling was against the manifest weight of the evidence presented during the trial because plaintiffs established through testimony from witnesses from the National Transportation Safety Board and the Federal Aviation Administration that Gerkins' lack of formal training was causally connected to the accident.

In *Ohio Fair Plan Underwriting Assn. v. Reese* (1984), 17 Ohio App. 3d 54, 57 the Court stated that it is well established in Ohio law that:

"*** parties to insurance contracts must enter into such contracts with the utmost good faith, with neither party concealing material matters from the other. *Washington Mut. Ins. Co. v. Merchants & Manufacturers' Mut. Ins. Co.* (1856), 5 Ohio St. 450, 480. *** "

Further, it is well established in Ohio law that a misrepresentation of a material fact in an insurance contract renders such contract voidable at the option of the defrauded party. *Allstate Ins. Co. v. Boggs* (1971), 27 Ohio St. 2d 216.

The Supreme Court in *Hutchins v. The Cleveland Mutual Ins. Co.* (1860), 11 Ohio St. 477, 479 determined that a fact is "material" as follows:

"Where any matter is material to the risk, in the judgment of the insurer, though it may not be in fact material, and the insured, knowing this, makes a false representation as to such matter, it will avoid the policy. By making an inquiry as to any matter, the insurer shows that he deems it to be material, and shows that the answer may induce him to take or refuse the risk; he is, therefore, entitled to a true answer, although other persons may not be able to see how it can affect the risk."

In addition, a further test of "materiality" of fact in relation to an insurance contract is a fact that:

"*** if communicated to the insurer, would either induce him to decline an insurance altogether, or not to accept it unless at a higher premium. Any fact is material the knowledge or ignorance of which would naturally influence an insurer in making the contract at all or in estimating the degree and character or the risk, or in fixing the rate of insurance." *Mieritz v. Metropolitan Life Ins. Co.* (1901), 8 Ohio N.P. 422, 425.

In this situation, it is undisputed that John Maxcy, owner of the aircraft, had no intent to deceive, nor did he know of Marvin Gerkins' misrepresentations concerning his qualifications.

Further, the record indicates that the insurance agent for Dickens Insurance Company, Terry Campton, when contacted by John Maxcy

concerning liability coverage for his 62 Cessna 310 aircraft, inquired into the qualifications of the pilot. Terry Campton testified as follows:

"*** 

"Q. And what did Mr. Maxcy request in that conversation, if you recall?

"A. He requested liability only coverage on a 62 Cessna 310, and he indicated that the pilot would be Marvin Gerkins.

"Q. What, if anything, did you ask Mr. Maxcy for your records?

"A. I would ask him the year of the aircraft, the registration number and the pertinent pilot information, if he had it.

"Q. Do you recall what information Mr. Maxcy had at that time with regard to pilot information?

"A. I'm not sure. I've written down 480 total, 37 hours multi-engine time. I don't recall if Mr. Maxcy gave me that information or Mr. Gerkins gave me that information.

"*** 

"Q. So you were interested in the hours and qualifications of whatever pilots were going to be flying Mr. Maxcy's aircraft, correct?

"A. Correct.

"Q. What did you do after that phone conversation to the best of your knowledge?

"A. I contacted the available markets, and I only contacted the markets that I felt would be interested in this risk.

"Q. Why were you interested in the hours and qualifications of the pilots?

"A. That's the basis for underwriting the premium.

"Q. And what do you mean by that for the record?

"A. The premium is based on the pilots' qualifications along with the type of aircraft they are flying.

"Q. And what do you do with information with regard to a pilot or his qualifications after you've received it from the prospective insured?

"A. Then, I contact the markets, and I use that information -- I would call the client back, give him the premiums if he gave me an order to the coverage, we would send him an application at that time, and they would put down the information themselves on the application.

"*** " (T. 61-64)

Don Barker, an underwriter for Southern Aviation Insurance Group, further inquired into the qualifications of the pilot of Maxcy's aircraft through Mr. Campton:

"*** 

"Q. O.K., what was your understanding during or after your conversation with Mr. Campton as to who was going to be flying the Cessna 310?

"A. Mr. Gerkins.

"Q. And did you have an understanding, based on your conversation with Mr. Campton as to what Mr. Gerkins' qualifications were, if any, as a pilot?

"A. Well, he, I asked him what his qualifications were and he told me that he was a private [sic] with a multi-engine rating and had 480 hours with 37 hours in multi-engine and make and model, make and model being 310.

"*** 

"Q. What did you want that information for about the qualifications of Mr. Gerkins?

"A. Well, the information that I received is the basis of how I quote the risk.

"Q. O.K., what do you mean, how you quote a risk? Why don't you tell us what a quote is?

"A. Well, a quote is simply a premium and certain requirements that we are going to require of the insured or the pilot.

"Q. O.K., now you mentioned requirements that we have on the pilot. Does Southern Aviation have its own underwriting guidelines as to what qualifications are necessary in order to issue a policy of insurance?

"A. Yes, it does.

"Q. And did the information that was provided to you by Mr. Campton with regard to Mr. Gerkins, did they fit Southern Aviation's underwriting guidelines?

"A. Yes, it id (Sic).

"Q. So at the time the quotation was prepared, it was your understanding that Mr. Gerkins was a private pilot with a multi-engine rating, is that correct?

"A. Yes.

"*** " (T. 103-105)

In addition, Mr. Barker testified that it was not the intent of the policy to coiner accidents in which a student pilot was carrying passengers, to provide coverage for a nonmulti-engine rated pilot flying a Cessna 310 aircraft, nor was it the intent of the policy to coiner a noninstrument rated pilot. (T. 126)

"Q. Do you know now, as you sit here today, whether Mr. Gerkins was a private multi-engine rated pilot?

"A. It is my understanding he was not.

"Q. That he was neither?

"A. He was neither private rated or multi-engine rated.

"Q. And what is the significance of the fact that Mr. Gerkins was not a private pilot with multi-engine rating?

"A. The policy would not be in effect.

"***

"Q. Had you known of Mr. Gerkins' actual qualifications in June of 1985, would Southern Aviation have issued this policy toe Mar. Maxcy?

"A. No.

"Q. Why is that?

"Q. We will not put nonrated pilots in a Cessna 310, or any airplane.

"*** " (T. 126-127)

Further, Mr. Barker testified that Southern Aviation would not have extended coverage to the aircraft had they known that Gerkins was only a student pilot with only a single engine rating.

In addition, under federal law, FAA regulations do not permit persons with only a student certification to pilot a multi-engine plane for business purposes. 14 C.F.R. 61.89 (1982).

John Maxcy, on his application for insurance (Plaintiffs' Exhibit 7) indicated that the aircraft would be used for "private business and pleasure." Therefore, it is clear that Marvin Gerkins would not have been permitted to pilot that aircraft under federal law.

Although there is conflicting evidence in the record that the accident Gerkins was involved in was due to pilot error, we cannot say that the trial court's finding that there was no causal connection with Gerkins' lack of proper certification and the accident was against the manifest weight of the evidence.

However, since the qualifications of Marvin Gerkins were relevant and "material" to the issuance off insurance coverage in this case, and since Marvin Gerkins misrepresented his qualifications to John Maxcy, who in turn provided the information to the insurance company, we find that the insurance policy is void.

Therefore, we conclude that the trial court erred in placing the burden upon the plaintiff insurance companies to establish by a preponderance of the evidence that a breach of the policy terms in the insurance contract was the proximate cause of the accident.

Assignments of error one and three are well taken. Assignment of error number two is not well taken.

Assignment of error number four:

"THE TRIAL COURT ERRED IN DENYING APPELLANTS THE RIGHT TO A TRIAL BY JURY."

R.C. 2721.10 provides for a jury trial in declaratory judgment actions as follows:

"When a preceding under sections 2721.01 to 2721.15, inclusive, of the Revised Code, involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

R.C. 2311.04 provides for the right to a jury trial in a civil action:

"Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure.

"All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

In *Erie Ins. Group v. Fisher* (1984), 15 Ohio St. 3d 380, 382 the Supreme Court, citing to *Travelers Indemnity Co. v. Cochrane* (1951), 155 Ohio St. 305, paragraph one of the syllabus, stated:

"In *Cochrane*, this court held that in an action whereby the insurer merely sought a determination of its obligations to the insured and sought the avoidance and cancellation of the policy as to the insured, and did not seek a decree relating to 'the recovery of money only,' the question was properly one for the court. It was further held to be the province of the court to ascertain the facts necessary to construe the contract and determine the obligations of the insurer. However, the right to trial by jury does exist in a declaratory judgment action which is between an insurer and the insured or the injured party, and which is for the recovery of money. *** "

In this case, the plaintiffs filed a complaint for declaratory judgment for determination of the insurer's obligations to the insureds under the policy. The Estates of Marvin and Kay Gerkins upon filing a cross-claim further filed a jury demand. In addition, it was stipulated by the parties and entered into the record by the court that the plaintiffs' complaint for declaratory judgment and the defendants' cross-claims would be severed and decided in separate proceedings. Thus, there was no jury demand as to

plaintiffs' complaint in the declaratory judgment action.

Even if the trial court committed error by finding that had a jury demand been made on the issues raised by the original complaint herein that the parties are not entitled to a trial by a jury in a declaratory judgment action filed by an insurer against an insured for the purpose of construing an insurance policy in determining the insurer's obligation to the insured, we conclude that such error was harmless and not prejudicial to the plaintiffs.

Assignment of error number four is not well taken. For the reasons stated above and upon the authorities cited and discussed, the judgment of the Court of Common Pleas of Paulding County is reversed.

*Judgment reversed.*

BRYANT and EVANS, J.J., concur.