**STATE FARM FIRE & CASUALTY COMPANY, Appellee,**

v.

**DAVIDSON et al., Appellees; Grange Mutual Casualty Company, Appellant.**

[Cite as *State Farm Fire & Cas. Co. v. Davidson* (1993), 87 Ohio App.3d 101.]

Court of Appeals of Ohio,
Montgomery County.

No. 13685.

Decided April 7, 1993.

*Gordon D. Arnold,* for appellee State Farm Fire & Casualty Co.

*Sherri L. Davidson* and *Christopher M. Smith, pro se.*

*Arthur A. Ames,* for appellant Grange Mutual Casualty Co.

FREDERICK N. YOUNG, Judge.

This case comes to us after a grant of summary judgment to State Farm Fire & Casualty Company ("State Farm") that declares Sherri L. Davidson's State Farm automobile liability insurance policy void *ab initio* and permits recovery of $1,890.65 State Farm had paid out on a claim. Grange Mutual Casualty Company ("Grange Mutual"), who must pay if State Farm does not, intervened in the action and now appeals.

## I

Sherri Davidson applied to State Farm for automobile liability insurance on October 14, 1990 and spoke to a State Farm agent about the terms and conditions

of coverage. She asked specifically whether her nephew Christopher M. Smith would be covered under the policy, because he liked to borrow her truck to go to dog shows. The agent said yes, everyone who with her permission used a vehicle she had insured under the policy would be covered.

The agent then asked her whether any member of her household had a driver's license suspended or revoked within the last three years. Davidson indicated that this was not the case. She was offered the policy and she purchased it.

In the spring of 1991, Davidson permitted her nephew Christopher to use her Ford Escort since his own car had broken down. On May 20, 1991, he crashed it in an accident that involved another driver. Davidson promptly filed a claim under her policy and State Farm paid it. Sometime later, State Farm sought rescission and declaratory judgment, alleging that Davidson had misrepresented material facts when applying for the policy: specifically, in representing that no member of her household had a license suspended within three years prior to her application for insurance.

Grange Mutual, the insurance company of the other driver involved in the accident, intervened and filed its own motion for summary judgment and complaint for declaratory judgment. Grange Mutual's motion for summary judgment was overruled, and State Farm's granted. On appeal, Grange Mutual assigns error to the trial court in granting State Farm's motion for summary judgment and finding that Davidson's representations were warranties that void the policy *ab initio;* in finding that Christopher was a member of Davidson's household for insurance purposes; in finding that Christopher had a license suspension within three years prior to Davidson's insurance application; and in considering a written record of a conversation between Davidson and a State Farm claims specialist when granting a motion for summary judgment to State Farm.

Civ.R. 56(C) permits a grant of summary judgment only when "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is apparent from the record that there remains no issue of material fact to be tried in this case, and so we agree with the trial court that this is a proper matter for summary judgment.

We will discuss the facts in greater detail as they are relevant to each assignment of error below.

## II

In its first assignment of error, Grange Mutual contends that "[t]he trial court erred in granting State Farm's motion for summary judgment and in overruling

Grange Mutual's motion for summary judgment and finding that Sherri David-son's statements in the application and policy were warranties which void the policy *ab initio*."

Deciding this issue requires us to assume that Davidson did misrepresent material facts to State Farm's agent when entering the insurance contract, and that her misrepresentations induced State Farm to offer her insurance it would otherwise not have, or would only have offered at a higher premium.

The law in Ohio makes a distinction among material misrepresentations depending on whether they are mere representations or warranties: a false warranty will render an insurance policy void *ab initio*, while a misstatement that does not rise to the level of a warranty may only render the policy voidable. The Supreme Court in *Allstate Ins. Co. v. Boggs* (1971), 27 Ohio St.2d 216, 219, 56 O.O.2d 130, 131, 271 N.E.2d 855, 858, defined a "warranty" as "a statement, description, or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy." In this case, we have a statement that appears on the face of the policy.

The "Declarations" section of the State Farm policy states: "We, State Farm Fire and Casualty Company, agree to insure you according to the terms of this policy based * * * on your statements in these declarations * * * [which] are your statements and are true. * * * Your statements are: * * * License History. Neither you nor any member of your household within the past 3 years has had a license to drive or vehicle registration suspended, revoked, or refused." Davidson accepted the policy.

Because it appears on the face of the policy, this declaration has "at least the semblance of [a warranty] which would render the policy void *ab initio* if the misstatement therein was material to the risk." *Boggs, supra,* 27 Ohio St.2d at 221, 56 O.O.2d at 132, 271 N.E.2d at 859. For a decision from this court holding that a misrepresentation is not a warranty if the language of the policy does not specifically state or incorporate the particular fact misrepresented, see *City–Wide Bldg. Finance Corp. v. J.C. Penney Cas. Ins. Co.* (Mar. 23, 1982), Montgomery App. No. CA–7388, unreported.

However, the *Boggs* court goes on to say, "the mere fact that a statement of an insured is incorporated in a policy does not necessarily make such statement a warranty. Courts do not favor warranties, or forfeitures from the breach thereof, and a statement as to conditions does not constitute a warranty unless the language of the policy, construed strictly against the insurer, requires such an interpretation. * * * In other words, * * * if it is [an insurer's] purpose to provide that a misstatement by the insured shall render the policy void *ab initio,*

such facts must appear clearly and unambiguously from the terms of the policy." *Boggs, supra,* 27 Ohio St.2d at 219, 56 O.O.2d at 131–132, 271 N.E.2d at 858.

A clear and unambiguous warning that misstatement was grounds for avoidance appeared in a policy examined in *Home Ins. Co. v. Gordon* (Nov. 21, 1985), Cuyahoga App. No. 49671, unreported, at 6, 1985 WL 8437: "We do not provide coverage for a person who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." The court in that case restricted its inquiry to those material facts appearing on the face of the policy, since, just as in *City–Wide Bldg., supra,* there was no language clearly incorporating the insurance application. There was a misstatement on the face of the policy in that case of the name of the insured, and the policy was held to be void for that reason.

See, also, *Spriggs v. Martin* (1961), 115 Ohio App. 529, 19 O.O.2d 221, 182 N.E.2d 20, a pre-*Boggs* case, in which it was held that although a policy specifically provided that it was issued in reliance on the declarations of the insured, a false declaration relating to whether the insured had ever had an insurance policy cancelled was a mere representation and not a warranty when there was no language in the policy specifically making the policy void in the event of a false declaration, nor language saying the policy was issued in reliance on the truth of the declarations in the application. It is the position of this court, based on *Boggs* as well as on our observation that there is no principled distinction to be made between "in reliance upon" and "in reliance upon the truth of," that the operative difference between a warranty and a representation, where both plainly appear or are plainly incorporated into the policy, is language to the effect that a misstatement will render the policy void from its inception.

█ Applying this rule to the State Farm policy, we do not find that the declaration of license history constitutes a warranty the breach of which will render the policy void *ab initio.* Though the declaration makes clear reference to the license history of the insured and members of her household, and says that the policy is issued based on the truth of her declaration to the effect that her history and that of her household members is unobjectionable, yet we find no language in the policy clearly indicating that a false declaration will mean the policy is not merely subject to cancellation, but may be avoided altogether, even after the insured has suffered a loss.

We acknowledge that in reaching the decision we do, we differ with the Court of Appeals for Paulding County, which held in *Am. Continental Ins. Co. v. Estate of Gerkens* (1990), 69 Ohio App.3d 697, 706, 591 N.E.2d 774, 779, that a policy for liability insurance covering a Cessna 310 aircraft was void from its inception because a false declaration relating to the qualifications of the pilot was "relevant and 'material' to the issuance of coverage." That court did make reference to the

*Boggs* decision, but mistakenly made use of the language relating to what was required to make a policy voidable, not what was required to make it void after the loss has occurred. See *Estate of Gerkens, supra,* at 703, 591 N.E.2d at 777.

Put simply, the State Farm policy satisfies the first part of the test, which requires that a particular representation either plainly appear on the policy or be plainly incorporated into it, but it does not satisfy the second part of the test, which requires a plain warning that a misstatement as to those facts will render the policy void from its inception.

Appellant's first assignment of error is well taken and we sustain it.

### III

In its second assignment of error, Grange Mutual states that, "[t]he trial court erred in granting State Farm's motion for summary judgment and in overruling Grange Mutual's motion for summary judgment and finding that Christopher Smith was a member of Sherri Davidson's household for insurance purposes."

While our sustaining appellant's first assignment of error is sufficient grounds in itself for a reversal of the summary judgment granted to State Farm, we believe it is very important for the future validity of the insurance contract Davidson has with State Farm to consider whether she in fact misrepresented a material fact to State Farm.

Christopher Smith is Sherri Davidson's nephew, the son of her half-brother. He lived with her during his last few years of high school, and when he graduated in June 1990, he moved out. Between June 1990 and October 1990, Christopher lived at four different residences and maintained during that time some contact with Davidson's home.

Resolution of this issue will hinge on the proper construction of the term *"household." "Household"* is nowhere defined in the State Farm policy. The leading case treating the definition of this term is *Shear v. W. Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 11 OBR 478, 464 N.E.2d 545, which held that the term *"household"* when not defined in an insurance policy must be given its common, ordinary, usual meaning. *Shear, supra,* at 166, 11 OBR at 481, 464 N.E.2d at 549. The court referred to the definition given in Webster's Third New International Dictionary—"those who dwell under the same roof and compose a family." *Id.* See, also, *Snedegar v. Midwestern Indemn. Co.* (1988), 44 Ohio App.3d 64, 541 N.E.2d 90, and *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 513 N.E.2d 733. The Oxford English Dictionary defines *"household"* as "the inmates of a house collectively; an organized family, including servants or attendants, dwelling in a house; a domestic establishment." We are unpersuaded

that Christopher Smith and Sherri Davidson met this definition in October 1990, when Sherri Davidson applied for the State Farm policy.

During the summer before October 1990, Christopher lived with several different friends, at several different residences, and finally began staying at the house of one Cindy Thompson, another friend of his, who worked weeknights and every other weekend, who needed him at her home to watch her children. Christopher still visited his aunt at her house frequently during that summer, less frequently during the fall, invited his friends there to make use of her swimming pool, received all his mail there, occasionally spent the night there on those weekends when Cindy Thompson did not need him to watch her children, and often mowed her lawn.

Christopher kept many of his belongings at his aunt's house. Many of these things were packed up, however, apparently being stored. Attachment 1 to Robert Kaiser's affidavit. In her interview with Robert Kaiser, Davidson said that her nephew was storing things at her house because there was no room for them where he was living. *Id.*

The trial court makes much of the fact that Christopher used his aunt's address to receive all of his mail and legal notices. This merely indicated that he had not yet fixed on a new long-term residence. Though he may have meant to live elsewhere than his aunt's house permanently, he may have meant to live in any particular place not his aunt's house on a temporary basis only. Practically speaking, this was going to present some difficulties for him if he wanted consistent mail delivery. Having it all sent to Davidson's house was an expedient way to avoid this problem, and we are not prepared to say that Davidson's was truly his permanent residence on this basis alone. See *Thompson, supra,* 32 Ohio St.3d at 341, 513 N.E.2d at 735.

In *Shear, supra,* the Supreme Court found that a father and his emancipated son were members of the same household when they lived together under the same roof on a permanent basis. In *Thompson,* the court found that an adult man and his brother were members of the same household when they were related by blood and lived under the same roof. In *Napier v. Banks* (1969), 19 Ohio App.2d 152, 48 O.O.2d 263, 250 N.E.2d 417, an emancipated daughter was not a member of her father's household when she only meant to stay until she could make other living arrangements. In a prior decision of this court, *Bunch v. Nationwide Mut. Ins. Co.* (Jan. 11, 1983), Montgomery App. No. 7897, unreported, 1983 WL 5014, we held that a man was a member of his brother's household when he kept some of his belongings there, was invited to stay indefinitely, did regularly stay there from Friday evening to Monday morning each week, and had been doing so for over six months at the time of the accident. See, also, *United*

*Ohio Ins. Co. v. Bolin* (Apr. 11, 1989), Miami App. No. 88–CA–21, unreported, 1989 WL 35885.

■ The facts in *Bunch* are similar to those in *Snedegar, supra,* where a minor child was held to be a member of his father's as well as his mother's household for insurance purposes when he regularly visited there one or two nights a week, received mail there, kept belongings there, and participated in activities with his father and stepmother on a permanent basis. "[T]his living arrangement had been permanent and on a regular basis for several years." *Snedegar, supra,* 44 Ohio App.3d at 68, 541 N.E.2d at 95. Duration, regularity, and permanence of residence are important factors to consider in determining whether a person is a member of a household for purposes of insurance. *Id.* at 69, 541 N.E.2d at 96.

■ We agree with appellant that the facts in this case demonstrate a strong familial relationship, but do not rise to the level of "dwelling in a house together." Admittedly, Christopher met many of the criteria a court may consider when determining whether someone is a member of a household. Based on our reading of the applicable law in this state and this district, we will look most closely at whether Christopher's contacts with Davidson's household were sufficiently permanent, long-term, or regular to make him a member.

Though he enjoyed substantial privileges at Davidson's house, not infrequently spending the night there, and there received mail and stored some of his belongings, as a matter of law, his overnight visits were insufficiently permanent, long-term, or regular for him to be a member of her household for insurance purposes.

Further, it is important to note that when Davidson was asked whether a member of her household had a license suspension, she did not merely respond, "no": she said, "nobody's living in my house now that's had their [*sic*] license suspended." Attachment 1 to Robert Kaiser Affidavit at 12. This certainly put the State Farm agent she was speaking to on notice that this is how she construed the term. State Farm's agent might have disabused her of any incorrect interpretation, or inquired further into the extent of Christopher Smith's relationship to her. State Farm did neither of these things. Though State Farm knew Christopher was likely to borrow Sherri's vehicles from time to time, no one investigated his driving record or made it an issue in the insurance application or policy.

■ Moreover, we note that when construing insurance terms, we have generally followed a policy favoring the finding of coverage. See *United Ohio Ins. Co., supra,* at 16. We will construe any doubtful language in favor of the policy holder rather than the insurance company, since the insurance company

writes the policy and can include in it what language it likes.  See *Boggs, supra*, 27 Ohio St.2d at 219, 56 O.O.2d at 131, 271 N.E.2d at 858, and *Bunch, supra*, at 5.

We therefore sustain appellant's second assignment of error.

## IV

Appellant's third and fourth assignments of error state:

"III.  The trial court erred in granting summary judgment to State Farm based on evidence outside the parameters of Ohio Rule of Civil Procedure 56."

"IV.  The trial court erred in granting State Farm's motion for summary judgment and in overruling Grange's motion for summary judgment and finding that Christopher Smith had a license suspension within three years before Sherri Davidson's insurance application."

These assignments present evidentiary questions which we need not reach in view of our resolution of appellant's first two assignments of error.

Because we find that appellant's first and second assignments of error are well taken, we reverse the judgment of the trial court granting summary judgment to State Farm, and remand the cause with an order that Grange Mutual's motion for summary judgment be granted.

WOLFF, J., concurs.

FAIN, J., concurs in the judgment.

*Judgment reversed*
*and cause remanded.*

FAIN, Judge, concurring in the judgment.

Although I agree with the opinion of this court in all other respects, I disagree with the analysis of Grange Mutual's second assignment of error.

In my view, whether Christopher was a member of Davidson's household for purposes of the insurance policy's exclusion is a mixed question of law and fact upon which reasonable minds could come to different conclusions.  Therefore, summary judgment should not have been rendered in favor of State Farm.

Because I agree with this court's disposition of Grange Mutual's first assignment of error, the question of Christopher's status as a member of Davidson's household was immaterial to Grange Mutual's motion for summary judgment, which should have been granted in any case.  Therefore, I concur in the judgment.