GALLENSTEIN BROTHERS
INC., et al., Plaintiffs,

v.

GENERAL ACCIDENT INSURANCE
COMPANY, et al., Defendants.

No. C–1–00–756.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 18, 2001.

Jay Richard Langenbahn, James Michael Moore, Lindhorst & Dreidame, Cincinnati, OH, for plaintiffs.

Robert P. Johnson, Thompson Hine LLP, Christopher Mark Bechhold, Thompson, Hine, & Flory, Thomas Spencer Shore, Jr., Rendigs Fry Kiely & Dennis, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment (doc. 22); Defendant General Accident Insurance Company's Response (doc. 32); Defendant Roeding Insurance Agency's Response (doc. 31); Plaintiffs'

Reply (doc. 33); Defendant General Accident Insurance Company's Motion for Summary Judgment (doc. 17); Plaintiffs' Response (doc. 30); Defendant General Accident Insurance Company's Reply (doc. 36); Defendant Roeding Insurance Agency's Motion for Summary Judgment (doc. 21); Plaintiffs' Response (doc. 29); and Defendant Roeding Insurance Agency's Reply (doc. 34).

## Procedural History

Plaintiffs, Gallenstein Brothers, Inc. et al., filed their Complaint in Hamilton County Municipal Court on August 10, 2000 (doc. 1). Defendants filed their Notice of Removal on September 11, 2000 (doc. 1). Defendant General Accident Insurance Company (hereinafter "CGU") filed an Answer on September 12, 2000 (doc. 2). Defendant Roeding Insurance Agency (hereinafter "Roeding") filed an Answer on September 26, 2000 (doc. 3). On May 31, 2000, Defendant CGU filed a Motion for Partial Summary Judgment (doc. 17). On June 1, 2001, Defendant Roeding filed a Motion for Summary Judgement (doc. 21). On June 1, 2001, Plaintiffs filed a Motion for Partial Summary Judgment (doc. 22). On June 29, 2001, Plaintiffs filed a Memorandum in Opposition to Motion for Summary Judgment of Defendant Roeding Insurance Agency (doc. 29). Plaintiffs filed a Memorandum in Opposition to Defendant CGU's Motion for Summary Judgment on June 29, 2001 (doc. 30). On June 29, 2001, Defendant Roeding Insurance Agency filed a Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment (doc. 31). On June 29, 2001, Defendant CGU filed a Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment (doc. 32). On July 12, 2001, Plaintiffs filed a Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment (doc. 33). On July 13, 2001, Defendant Roeding filed a Reply Memorandum in Support of its Motion for Summary Judgment (doc. 34). On July 17, 2001, Defendant filed a Reply Memorandum in Support of Motion for Partial Summary Judgment (doc. 36). All the Motions before the Court are now ripe for disposition.

## Background

The following facts are undisputed. Plaintiffs, Gallentstein Brothers, Inc. and Gallenstein & Gallenstein are general contractors and own about three dozen properties with buildings that Plaintiffs lease to businesses for warehousing and light industrial use (doc. 22). One of the properties owned by Plaintiffs is located in Cincinnati, Ohio at 10804 Millington Court (hereinafter, "L4") (doc. 31). That property was leased to Queen City Retrographics (hereinafter, "Queen City") (doc. 31). On April 9, 1999, a tornado destroyed the building located on that property (doc. 22, 31, 32) causing two million dollars ($2,000,000) in damage (doc. 21, 30). Queen City had procured insurance covering the building for approximately $636,000 (doc. 21). At issue in this case is whether the property damage insurance carried by Plaintiffs covers the difference between the tornado damage and the coverage carried by Queen City.

In 1993, Plaintiffs [1] engaged the services of Defendant Roeding in order to secure insurance for its property (doc. 31). Specifically, Mr. Gallenstein worked with Roeding agent Dick Ries to procure insurance (doc. 31). Prior to the April tornado, Mr. Ries secured various insurance poli-

---

1. John Thomas Gallenstein, Plaintiffs' president, had the responsibility of procuring insurance for Plaintiffs. In the interest of clarity, the Court will refer to John Thomas Gallenstein as Mr. Gallenstein.

cies from CGU, for Plaintiffs' properties for the years 1998–1999 (doc. 31).

Mr. Gallenstein, following the advice of Defendant Roeding, employed a number of strategies in an effort to minimize the cost of insurance. First, Plaintiffs required tenants to secure insurance against building damage as consideration for the lease on four of its properties, including Location 4 (doc. 22, 31, 32). Second, Plaintiffs secured liability and business interruption coverage on all of their property (doc. 32). Last, Plaintiffs secured a "blanket policy" (doc. 22, 31, 32). A blanket policy allows the insured to have a policy that covers a number of properties for something less than the full replacement value of the aggregate of those properties (doc. 22, 31, 32). Because Plaintiffs' properties were spread out throughout the Greater Cincinnati area as well as in various Kentucky locations, Mr. Gallenstein determined that the risk of requiring replacement coverage for all 34 properties was quite low (doc. 22, 31, 32). Mr. Gallenstein, therefore, determined that securing a blanket policy was an acceptable way to minimize the cost of insurance (doc. 22).

Through the agency of Defendant Roeding, Mr. Gallenstein procured a blanket insurance policy identified as PPP0465721–00 from Defendant CGU (doc. 32). A schedule extension to the above policy identified as PPP 00484.96 lists L4 as having building coverage (doc. 31). During the creation of the policy at issue, Defendant Roeding created a document entitled Statement of Values. This document is a listing of the location of the insured's property and the value attached to those properties (doc. 31). The Statement of Values listed all of the property owned by Plaintiffs. However, the four properties for which Plaintiffs required the tenants to procure insurance (including L4) were listed with a dash (-) in the blank box in the

building coverage column (doc. 31). All of the other properties listed on this document listed a dollar amount indicating the value of that particular property (doc. 21).

It is here that Plaintiffs' and Defendants' recitations of facts diverge. Plaintiffs contend that Defendant Roeding's agent, Mr. Ries, explained to Mr. Gallenstein that Plaintiffs' blanket insurance provided coverage for all losses to property as long as the total losses were less than twenty-two million dollars ($22,000,000) (doc. 22). Plaintiffs further contend that Mr. Ries stated that this insurance could be used for any property that was listed on the policy (doc. 22). Plaintiffs also allege that Mr. Ries represented that the Statement of Values was merely a tool used by the insurance company and did not impact policy coverage (doc. 33).

Mr. Gallenstein stated that after this conversation with Mr. Ries he understood the tenant-insured properties to be insured by the CGU damage policy to the extent that the building was damaged in excess of the insurance procured by the tenant leasing them (doc. 22). Plaintiffs allege that nothing in CGU's policy contradicts this understanding and that Defendant Roeding never communicated to Mr. Gallenstein that L4 was not covered under CGU's policy (doc. 22). In fact, Plaintiffs contend that Defendant Roeding sent it a document titled "Certificate of Insurance" indicating that all of its property was insured under CGU's policy and that in this document, there were no exceptions listed for any of the tenant-insured property, including L4 (doc. 22). Plaintiffs further contend that neither Defendant became aware of the alleged computer error that caused L4 to be listed on its policy until after the 1999 tornado, a year after the policy took effect (doc. 22).

Finally, Plaintiffs contend that after the tornado destroyed L4, Mr. Ries, Defen-

dant Roeding's agent, told Mr. Gallenstein, "don't worry about it; everything's covered; these things have a way of working theirselves out" [sic] (doc. 22).

Defendants Roeding and CGU aver that the inclusion of L4 on the schedule extension was a clerical error (doc. 31, 32). Defendant Roeding alleges that the blanket policy coverage for Plaintiffs' properties was calculated using the sum of the property values listed on the Statement of Values. Defendants Roeding and CGU further contend that, because a value for L4 was not listed on the Statement of Values, CGU never charged and Plaintiffs never paid any premiums for insurance to cover damage to L4 (doc. 31, 32). Defendants conclude from these facts that Plaintiffs' L4 building was not insured for the tornado damage (doc. 31, 32).

Defendant Roeding contends that Mr. Gallenstein's understanding of the function of the blanket insurance policy was created through conversations with various people in the insurance industry and that Mr. Gallenstein never specifically questioned its agent, Mr. Ries, concerning this understanding (doc. 31). Defendant Roeding further contends that Mr. Ries never confirmed Mr. Gallenstein's understanding (doc. 31).

Defendant Roeding and Defendant CGU contend that, in fact, Plaintiffs did understand that the total blanket limit of property coverage was a function of property values listed on the Statement of Values and that Mr. Gallenstein acknowledged that the amount of blanket coverage was the sum of every building value listed on the policy (doc. 31, 32). Defendants argue that a series of communications between Mr. Gallenstein and Roeding demonstrates the understanding that Mr. Gallenstein was aware that when property was added to the Statement of Values, the blanket coverage dollar amount increased. Defen-

dants point to a letter dated October 10, 1997 from Mr. Gallenstein to Roeding, in which Mr. Gallenstein expressed concern that a building at location 26 did not have a property value listed on the Statement of Values. In this same letter, Mr. Gallenstein asked Roeding "didn't we add this to the policy?" (doc. 31, 32). In a letter dated November 19, 1997, Mr. Gallenstein attached a Statement of Values with a formerly blank space next to location 26 in which he had written in "now covered" (doc. 31, 32). Finally in a letter dated December 10, 1997, Defendant Roeding sent a letter to Mr. Gallenstein informing him that location 26 had been added to the policy which resulted in an increase in the property value coverage (doc. 31, 32).

Defendant Roeding further contends that it sent Mr. Gallenstein a document indicating the premiums charged for insuring each of Plaintiffs' properties and that the document indicated that no premiums were being charged for L4 (doc. 31). Defendant Roeding also alleges that for the years 1994/1995 through 1997/1998, no insurance policy issued to Plaintiffs listed L4 as having blanket insurance coverage and that a 1997 summary of coverage, prepared by Defendant CGU and forwarded by Defendant Roeding to Mr. Gallenstein made no reference to L4 (doc. 31).

Finally, Defendant Roeding contends that the certificate issued to Plaintiffs erroneously listing L4 on the policy contained a disclaimer stating that "this certificate is issued as a matter of information only. It confers no rights on the certificate holder. This certificate does not amend, extend or alter coverage afforded by policies listed below" (doc. 31). Defendant Roeding contends that Plaintiffs took no action in reliance on the certificate and that he suffered no detriment based on the issuance of the certificate (doc. 31).

Defendant CGU contends that Defendant Roeding requested coverage for only those buildings owned by Plaintiffs that did not house a tenant who was required to insure the building against property damage (doc. 32). Defendant CGU further contends that Defendant Roeding prepared its application for Plaintiffs' insurance using information from insurance policies issued by different companies in prior years and that none of those policies ever listed L4 as a covered building (doc. 32).

## ANALYSIS

### I. STANDARD OF REVIEW

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321, 106 S.Ct. 2548; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir.1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " Guarino, 980 F.2d at 405 (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454–55 (6th Cir. 1991).

### II. DISCUSSION

Given the multitude and material nature of disputed facts before this Court, summary judgment in favor of Plaintiffs, Defendant CGU or Defendant Roeding is inappropriate. Because the Motions before the Court involve similar issues, the

Court's analysis will discuss the Motions in a single analysis.

## A. Ambiguity

Plaintiffs argue as a threshold issue that case law prohibits a court from reaching any analysis of the existence of a mutual or unilateral mistake if there is no ambiguity in the language contained in the written insurance policy.

 Specifically, Plaintiffs point to the holding in *State Farm Auto. Insurance Company v. Rose*, 61 Ohio St.3d 528, 531, 575 N.E.2d 459, 461 (1991) (overruled on other grounds) in which the Ohio Supreme Court held that a court is to give words in a policy plain and ordinary meaning. The Court further held that any ambiguity in a policy is to be liberally construed in favor of the insured. Plaintiffs also observe that in *Faruque v. Provident Life and Accident Insurance Company*, 31 Ohio St.3d 34, 34, 508 N.E.2d 949, 949 (1987), the Court held that it should not employ a liberal construction of an insurance policy in the absence of any ambiguity of language. Finally according to Plaintiffs, *Reliance Insurance Company v. Orleans Parish School Board*, 322 F.2d 803, 806 (5th Cir.1963) provides a definition of blanket insurance, stating that blanket insurance

> is one that invariably covers and attaches to every item of property described therein. If the loss of one item exhausts the whole amount of the policy, the entire insurance must be paid, and there can be no apportionment. Another definition is that a component, or blanket, policy is one which insures property collectively without providing in the event of a loss for a distribution of insurance to each of them.

Plaintiffs argue that because L4 is listed as an item of property on the Schedule Extension and because Plaintiffs purchased a blanket policy, Plaintiffs' policy with CGU unambiguously included damage to L4 in the policy's coverage (doc. 22). Plaintiffs argue that the Statement of Values, which did not list a value for L4 was not a part of the policy and is therefore not relevant to making a determination as to whether L4 was covered (*Id.*). Plaintiffs further argue that the policy application sent by Defendant Roeding to Defendant CGU, which did not mention L4, was not part of the policy either (*Id.*).

Plaintiffs conclude from this that L4 was unambiguously covered under its blanket insurance contract with CGU and therefore, that it is entitled to summary judgment on the issue of coverage for L4 (*Id.*).

Plaintiffs offer a correct reading of *State Farm Auto Insurance Company*. However, *Faruque* and *Reliance* do not offer the unqualified support that Plaintiffs present in their Motion. The Supreme Court of Ohio in *Faruque*, in a similar situation, apparently decided to look outside the four corners of the policy before it, stating that, "we do not believe that the terms of the policy are concise enough to dispose of the matter simply on the language employed in the contract of insurance." *Faruque*, 31 Ohio St.3d at 36, 508 N.E.2d 949.

In addition, while the *Reliance* Court acknowledged the definition of blanket insurance offered by the Plaintiffs as "one well-know [sic] definition," it also acknowledged the term "blanket policy" was a "term of art" and stated that "such terms of art are to be interpreted according to their received meaning with those who profess the art or profession to which they belong." *Reliance*, 322 F.2d at 806. The *Reliance* Court further acknowledged the definition used by other experts who testified that a blanket policy "usually covers an item, or class of property, such as in-

ventory or stock of goods, which fluctuates in content." *Id.*

In a summary judgment proceeding, the moving party must show that it is entitled to judgment as a matter of law. Given the precedent in *Faruque*, this Court believes that a finder of fact may consider, in its analysis of the insurance contract, the Statement of Values created by Plaintiffs and Defendant Roeding.

Further, the burden of production rests with the moving party and the facts presented must be evaluated in a light most favorable to the non-moving party. Here, Plaintiffs have not met their burden of production. Given the nature of the term "blanket insurance" as a term of art, it is possible for a reasonable finder of fact to determine L4 was not covered under the policy. This Court finds that there is a genuine issue of material fact as to whether the blanket policy created by Defendant Roeding in cooperation with Plaintiffs was intended to cover L4. This Court holds, therefore, that the determination of this contract's ambiguity or lack thereof is a question of fact for a jury and not a determination that can be made on summary judgment.

### B. Mistake

This Court now turns to the question of whether a mistake made by one or both of the parties to the insurance contract (i.e., the written policy) resulted in a contract that did not reflect the agreement between these two parties, making reformation of the contract proper.

Ohio law allows for the reformation of some written contracts that result from either mutual or unilateral mistakes if the party requesting reformation presents clear and convincing evidence of that mistake. *Snedegar v. Midwestern Indemnity Co.*, 44 Ohio App.3d 64, 64, 541 N.E.2d 90,

91 (1988) *mot. over.* 37 Ohio St.3d 712, 532 N.E.2d 142 (1988). *Ohio Farmers Insurance Co. v. Clinton County National Bank and Trust Co.*, 8 Ohio Misc. 228, 220 N.E.2d 381, 386 (C.P.1964) *affd. sub nom.*, *Shear v. West American Insurance Co.*, 11 Ohio St.3d 162, 464 N.E.2d 545 (1984). In *Merrill v. Hamilton*, 9 Ohio App.3d 111, 112, 458 N.E.2d 860, 861 (1982), the court stated that "reformation based on mutual mistake is allowed only where there is clear proof that the parties made the same mistake and that both parties understood the contract as the complaint alleges it as it ought to have been." In *Ohio Farmers*, the court characterized a unilateral mistake as one in which "one party believes a writing to correctly integrate a contract and the other knows it does not." 8 Ohio Misc. at 228, 220 N.E.2d at 382.

*Snedegar*, which dealt specifically with insurance policies, held that reformation of insurance policies is proper when there is clear and convincing evidence demonstrating that a unilateral mistake affected the insurance policy in question to the extent that the policy is not the correct integration of the parties' agreement. 44 Ohio App.3d at 69, 541 N.E.2d at 96. *Ohio Farmers* held that the above rule applies when the party which made the unilateral mistake is the party seeking reformation. 8 Ohio Misc. at 228, 220 N.E.2d at 382.

Defendant CGU argues that it has presented clear and convincing evidence that, at the very least, a unilateral mistake occurred, allowing this Court to reform the contract and remove L4 from the covered buildings (doc. 17, 32, 36). Defendant CGU argues that it was not asked by Defendant Roeding to cover L4 and that it did not charge a premium to Plaintiffs to cover L4 (*Id.*). Defendant CGU also points to the fact that Plaintiffs' application for insurance did not include coverage for L4 (*Id.*). Finally, Defendant CGU ar-

gues that if it had intended to issue a blanket policy covering all of Plaintiffs' properties (including those insured by tenants), it would have simply noted in its endorsement that all properties were covered (*Id.*). CGU claims that its separate listing of Plaintiffs' properties indicates its intention to cover some but not all of Plaintiffs' properties (*Id.*).

Defendant CGU further argues that evidence presented offers clear and convincing evidence of a mutual mistake resulting in a contract reflecting coverage for L4 which was not intended by either party (*Id.*). Defendant CGU argues that due to this mutual mistake, case law, as cited by this Court above, allows this Court to reform the contract in question (*Id.*).

Defendant CGU claims that such a mutual mistake is demonstrated by what it calls Plaintiffs' long-standing practice of omitting L4 from building damage insurance, and the fact that Defendant Roeding did not request coverage for L4 in its application for insurance (*Id.*). Defendant CGU further points to the testimony of Defendant Roeding that Plaintiffs did not intend to cover L4 and that it informed Plaintiffs that failing to assign a value to L4 on the Statement of Values would result in a lack of coverage under the blanket policy (doc. 17, 32). Defendant CGU also cites the premium breakdowns it sent to the Plaintiffs as evidence of mutual mistake (*Id.*). According to the Defendant, these breakdowns made clear to Plaintiffs that it was not being charged a premium to insure L4 and that if Plaintiffs had intended to cover L4, they would have inquired about such a situation (*Id.*).

Defendant CGU further argues that Plaintiffs understood the consequences of not assigning a value to L4 on the Statement of Values (doc. 17, 32, 36). Defendant CGU claims this understanding is demonstrated in a series of communications between Plaintiffs and Defendant Roeding in which Plaintiffs expressed concern that because another location was not listed on the Statement of Values that they were not covered under the blanket policy (doc. 17). Defendant CGU also argues that the evidence shows that Plaintiffs never intended to cover properties that were insured by the tenants of those properties. Defendant CGU points to the statements of Plaintiffs' employee, Phillip Moll, who instructed Defendant Roeding to add locations to the blanket policy when new leases were signed so that the new tenants did not have to pay the insurance (doc. 17). Finally, Mr. Ries, an employee of Defendant Roeding, testified that in a conversation following the April tornado, Mr. Gallenstein stated "we realize L4 is not covered" (doc. 17, 32).

Plaintiffs argue that there is no evidence of either mutual or unilateral mistake. Plaintiffs aver, that according to their understanding of the insurance contract with CGU, L4 was covered under its blanket policy (doc. 22, 30, 33). Plaintiffs further claim that nothing in the policy itself was inconsistent with that understanding (*Id.*). Thus, according to Plaintiffs the policy accurately reflected the contract that the parties intended to create and therefore they are entitled to judgment as a matter of law (doc. 22).

Plaintiffs further argue that both of the cases cited by CGU in support of its argument resulted in decisions favorable to the insured not the insurer (doc. 33). Plaintiffs noted that in *Snedegar*, 44 Ohio App.3d 64, 69, 541 N.E.2d 90, 96, the appellate court reversed the grant of summary judgment to the insurers of a 13-year-old holding that "Ohio law regarding mutual mistake in the formation of a contract requires that the contract provision in question be contrary to the understanding of all the contracting parties" (*Id.*).

Plaintiffs also argue that *Shear*, 11 Ohio St.3d 162, 464 N.E.2d 545, supports their position that the evidence presented by Defendant CGU is insufficient to allow Defendant CGU to survive summary judgment (*Id.*).

■ Ohio law generally distinguishes unilateral and mutual mistake. Unilateral mistakes that result from the negligence of the party making the mistake are generally not sufficient to allow reformation. *Lee v. The Dayton Power and Light Company*, 604 F.Supp. 987, 996 (S.D.Ohio 1985). Defendant CGU is correct that, when contracts for insurance are involved, some Ohio courts have allowed reformation based on unilateral mistake. However, as Plaintiff correctly asserts, those cases involved a unilateral mistake made by the insured and resulted in decisions favorable to the insured. Generally, an insured is less sophisticated than an insurer and insurance contracts generally involve intricate language. Given this, the Court agrees with the policy-based decisions of the *Snedegar* Court and concludes that *Snedegar* and its progeny intended to create protections for the insured rather than the insurer. Therefore, were the Court inclined to reform the contract between Plaintiffs and Defendant CGU, the Court would likely reform the contract to include L4 based on Defendant CGU's unilateral mistake which possibly led to Plaintiffs' misunderstanding of damage coverage for L4.

■ However, the evidence presented to the Court makes summary judgment on the issue of mistake in favor of either Plaintiffs or Defendant CGU inappropriate. The parties have both presented enough evidence to demonstrate a genuine issue of material fact as to whether the policy, as written, was a result of a unilateral or mutual mistake. Because both parties have been able to demonstrate a genuine issue of material fact, neither party is entitled to summary judgment.

There is a clear dispute between these two parties as to what understanding of blanket insurance Plaintiffs held and from whom the Plaintiffs acquired that understanding. Given this lack of clarity concerning Plaintiffs' understanding of the concept of blanket insurance, there is also a clear factual dispute as to whether the Plaintiffs intended to procure damage insurance for L4. Defendants have also been able to demonstrate a factual question as to whether the parties to this contract intended to include the Statement of Values in the contract for insurance.

Every one of these disputed facts is material to the determination of breach of the insurance contract and, as such, neither party has established that it is entitled to judgment as a matter of law.

Plaintiffs are correct that *Shear* requires clear and convincing evidence of mutual mistake before a court can reform a contract. However, by Plaintiffs' own admission, the case was "not decided ... on summary judgment but upon a review of the evidence, including findings, which the trial court had made regarding credibility of the witnesses" (doc. 33). Plaintiffs, have not offered to this Court any reason that the instant case, like *Shear*, should be decided on summary judgment rather than a trial on the merits.

## C. Defendant Roeding's Status as Agent

Defendant CGU argues in its Motion for Summary Judgment that Defendant Roeding acted as an agent for Plaintiffs as well as for Defendant CGU (doc. 17, 32). Therefore, according to Defendant CGU, Defendant Roeding's failure to apply for damage insurance for L4, through princi-

ples of agency, was also Plaintiffs' failure to apply for damage insurance for L4 (*Id.*).

■ The Ohio Supreme Court held in *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 612, 590 N.E.2d 254, 260 (1992), that an insurance broker becomes an agent for the insurer when (1) it makes the decision to place coverage on behalf of its customer with a specific insurer; or (2) the broker accepts an application for insurance on behalf of the customer. Defendant CGU argues, however, that recent Ohio appellate court cases make clear that it is possible for a broker to act as an agent for both the insurer and the insured. *Goodyear Tire & Rubber Company v. Aetna Cas. & Sur. Co.*, 2001 WL 57170, 2001 Ohio App. LEXIS 190 (9th Dist.2001). *Bishop v. Ingram–Disney Agency Inc.*, 1994 WL 476216, 1994 Ohio App. LEXIS 3933 (12th Dist.1994). *Goodyear Tire & Rubber Company* observed that the determination of whether this dual agency exists is a fact-specific inquiry.

■ Defendant CGU argues that the facts of this case demonstrate that Roeding was acting in a dual agency capacity, not solely as the agent of CGU (doc. 17). Defendant alleges that Roeding had a relationship with Mr. Gallenstein which predated the placement of Gallenstein's coverage with CGU and which predated the agency's relationship with CGU (*Id.*). Defendant CGU contends that Roeding shopped for Plaintiffs' coverage on a regular basis and switched from St. Paul to CGU in May 1998 only after soliciting bids from several other insurers (*Id.*). Defendant further avers that Defendant Roeding applied for the coverage requested by Plaintiffs and communicated with Plaintiffs' personnel regarding the proper coverage and the workings of blanket property insurance long before any agency relationship existed between Roeding and CGU (doc. 17, 32). These facts, ac-

cording to the Defendant, demonstrate that Defendant Roeding was indeed acting as Plaintiffs' agent and was therefore able to bind Plaintiffs (*Id.*).

Defendant CGU further contends that Mr. Ries and Ann Hedges, employees of Defendant Roeding, testified that they understood that L4 was not meant to be insured and further, in regard to that fact, Mr. Ries specifically advised Mr. Gallenstein that, following the tornado, and notwithstanding the error on the policy, the policy did not provide coverage (doc. 17). Finally, Defendant alleges that Mr. Gallenstein and Plaintiffs' controller, as well as employees of Defendant Roeding, realized that L4 was not covered under the policy (*Id.*). Defendant CGU concludes, therefore, that Defendant Roeding was acting as an agent for Plaintiffs and, in that capacity, bound Plaintiffs to an insurance policy that did not provide coverage for L4 (doc. 17, 32).

Plaintiffs argue that, pursuant to the rule in *Damon's*, Defendant Roeding became Defendant CGU's agent no later than May 15, 1998 (doc. 33). Plaintiffs support this assertion by pointing to the fact that Defendant CGU chose to utilize Defendant Roeding to deliver its policy to Plaintiffs (*Id.*). Plaintiffs also allege that Defendant Roeding's employee reviewed the policy on a page-by-page basis and found everything to be in order based upon what Mr. Gallenstein had requested (*Id.*).

Plaintiffs conclude that from that point on, actions of Defendant Roeding, as Defendant CGU's agent, are attributable to Defendant CGU (*Id.*). Finally, Plaintiffs conclude that Defendant CGU is liable to Plaintiffs on its policy because Defendant CGU's agent, Defendant Roeding, delivered a policy to Plaintiffs which provided for coverage for property damage to L4 (*Id.*).

This Court concludes that summary judgment in favor of Defendant CGU concerning the issue of agency is inappropriate. While Defendant correctly argues that under Ohio law, dual agency may be permissible, the cases they cite to make clear that a determination as to whether such dual agency was present is a factual determination. The wholly divergent accounting of the facts by Defendants and Plaintiffs clearly illustrate that the question of agency remains a genuine issue of material fact making summary judgment inappropriate.

### D. Promissory Estoppel

Defendant CGU argues it is entitled to judgment as a matter of law on Count II of Gallenstein's Complaint alleging that Defendant CGU is estopped from denying coverage because of the mistake in the policy (doc. 17, 36).

Under Ohio law, an element of estoppel based on an act or failure to act by another is that the party seeking the estoppel must have actually relied on the conduct of the parties against whom estoppel is sought. *Chubb v. Ohio Bureau of Workers' Compensation*, 81 Ohio St.3d 275, 279, 690 N.E.2d 1267, 1270 (1998). *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Education*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188, 196 (1994) held that "[e]quitable estoppel provides relief when one party changes his position in reasonable reliance on [representations made by another party] to his detriment."

Defendant CGU alleges that no employee or agent of Plaintiffs read or relied on the mistaken CGU policy (doc. 17, 36). Defendant CGU contends that Ms. Hedges, the employee at Defendant Roeding reviewed the policy before sending it to Mr. Gallenstein and did not notice the alleged mistake in the policy (*Id.*). Defendant CGU further contends that Mr. Gal-

lenstein only read the front of the policy to determine that all locations were mentioned without determining whether he was looking at the liability, business interruption, or property coverage (doc. 17). Defendant CGU points to the testimony of Mr. Gallenstein that he did not identify the mistaken property endorsement as the source of his belief that L4 was covered under the blanket property endorsement (*Id.*). Defendant alleges that Plaintiffs, in the five years prior to the issuance of the CGU policy, did not include L4 or the other tenant insured locations in the blanket property coverage (doc. 17, 32).

Defendant CGU concludes from this that this Court has no basis upon which to conclude that Plaintiffs relied on the mistake in the CGU policy or that Plaintiffs would have made any change had the CGU policy failed to include L4 under the blanket policy (*Id.*). Acceptance of such a conclusion would defeat any equitable estoppel claim raised by Plaintiffs.

Plaintiffs contend that they did want coverage for L4 and requested it from Defendant Roeding, the party Plaintiffs claim was acting as agent for Defendant CGU (doc. 29, 33). Plaintiffs further contend that if Defendant CGU is allowed to avoid coverage to L4, Plaintiffs will suffer a significant loss (*Id.*). Finally, Plaintiffs contend that it was reasonable for Mr. Gallenstein, based on the assurances given to him by Defendant Roeding, to rely on the terms of the written policy and believe that L4 was covered for property damage (*Id.*).

To determine whether Plaintiffs relied on the assurances of Defendant CGU, a finder of fact must decide whether Defendant Roeding acted as Defendant CGU's agent when offering the alleged assurances to Mr. Gallenstein given by Mr. Ries. This Court has already determined above, that

there is a genuine issue of material fact concerning whether Defendant .Roeding was acting as agent for Defendant CGU alone or for both Defendant CGU and Plaintiffs at the time of the creation of the policy in question.

Further, reliance is an inherently factual issue. A reasonable trier of fact could conclude that Plaintiffs relied on the assertions of Defendant Roeding. A reasonable trier of fact could also conclude that Plaintiffs relied on Defendant CGU's failure to remove L4 from the face of the policy. Therefore, summary judgment dismissing Plaintiffs' equitable estoppel claim in favor of Defendant CGU is inappropriate.

## D. Plaintiffs' Motion for Summary Judgment Against Defendant Roeding

In the event that the contract between Plaintiffs and Defendant CGU is reformed to exclude L4 from coverage, Plaintiffs ask this Court to grant summary judgment finding negligence on the part of Defendant Roeding (doc. 22).

 Under Ohio law, the elements of a negligence claim are (1) the existence of a duty owed by the defendant to the Plaintiffs, (2) the breach of duty, (3) causation, and (4) damages.

 Under Ohio law, an insurance agency has a duty to exercise good faith and reasonable diligence in providing insurance requested by its customer. *First Catholic Slovak Union v. Buckeye Union Insurance Co.*, 27 Ohio App.3d 169, 170, 499 N.E.2d 1303, 1305 (1986). An agent will be held liable if "as a result of his or her negligent failure to perform that obligation [to procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking." *Minor v. Allstate Insurance Com-*

*pany, Inc.*, 111 Ohio App.3d 16, 675 N.E.2d 550 (1996). The extent of the agent's liability is the amount the insured would have received from the insurer had the coverage been paid. *Id.*

Plaintiffs contend, that from the beginning of its relationship with Defendant Roeding, Mr. Gallenstein had an understanding created by Mr. Ries that all of Plaintiffs' properties were covered regardless of whether the tenant was required by lease to secure insurance coverage (doc. 22, 29, 33). Plaintiffs point to the fact that Mr. Ries never inspected any of the leases for the properties and never saw a Certificate of Insurance from any Gallenstein tenant prior to the tornado *(Id.)*. Plaintiffs further point out that Ms. Hedges, an employee of Defendant Roeding, admitted that before the policy was sent to the Plaintiffs, she reviewed the policy when it was received by Defendant Roeding from Defendant CGU and found everything to be in order *(Id.)*.

Plaintiffs conclude from this that all of the elements of negligence are met and that according to Ohio law, if the contract at issue is reformed to not include L4, Defendant Roeding is responsible for the difference between the coverage the Plaintiffs requested and the actual coverage allotted in the policy *(Id.)*.

Defendant Roeding alleges that prior to the policy in question here, no other policy procured by Defendant Roeding for Plaintiffs included L4 as having property coverage (doc. 21, 31, 34). Defendant specifically alleges that the property policy for the year 1997–1998 specifically referenced the Statement of Values to describe the way in which the L4 was covered *(Id.)*. Defendant Roeding contends that Mr. Gallenstein's understanding of blanket insurance was garnered through various broad conversations with numerous people in the insurance industry. Defendant Roeding

further contends that Mr. Gallenstein never specifically discussed his concept of blanket insurance with Mr. Ries and that he inquired specifically of Mr. Ries whether the blanket policy that Plaintiffs had procured would cover property damage to tenant insured properties including L4 (*Id.*).

Defendant Roeding concludes from this that, at the very least, there is a genuine issue of material fact as to whether it was negligent in its procurement of Plaintiffs' insurance policy (*Id.*).

■ There is a threshold issue that must be answered before negligence or lack thereof on the part of Defendant Roeding can be addressed. That issue is whether or not the policy in question afforded coverage for property damage for L4. This Court has already held that there is a genuine issue of material fact and that this threshold issue must be decided by a jury. Therefore, summary judgment in favor of either Plaintiffs or Defendant Roeding on the issue of negligence is inappropriate.

Even if the issue of coverage had been decided in favor of Defendant CGU resulting in a reformation of the contract such that L4 was not covered, summary judgment on Defendant Roeding's negligence is inappropriate. Plaintiffs aver that Defendant Roeding created an understanding that L4 was covered under the blanket policy (doc. 22, 29, 33). This disputed fact is central to the question of whether Defendant Roeding breached its duty to Plaintiffs. As that fact is in dispute, and is material, summary judgment on this issue is inappropriate.

The Court takes note that the determination of whether reformation is proper does not completely resolve the dispute between these two parties. If reformation is indeed proper, the Court may decide to reform the contract to exclude L4 from coverage. It is also possible, however, that the Court would determine that the contract should be reformed to include coverage for L4, requiring Plaintiffs to pay the premiums for which Defendant CGU contends they were not charged and requiring Defendant CGU to pay for the difference between the tornado damage done to L4 and the insurance coverage provided by Plaintiffs' tenant.

Having reviewed this matter, the Court hereby concludes that there are factual issues which prevent each Party from obtaining summary judgment at this time. The evidence presented by Defendants CGU and Roeding has demonstrated a genuine issue of material fact concerning the existence of ambiguity in the contract for insurance; both Defendants and Plaintiffs have shown a genuine issue of material fact regarding the existence of a unilateral or mutual mistake; there exist genuine issues of material fact as to whether Plaintiffs reasonably relied on the contract as written and finally, there exists a genuine issue of material fact concerning Defendant Roeding's negligence or lack thereof.

Therefore, the Court DENIES Plaintiffs' Motion for Summary Judgment (doc. 22). Further, the Court DENIES Defendant CGU's Motion for Summary Judgment (doc. 17). Finally, the Court DENIES Defendant Roeding's Motion for Summary Judgment (doc. 21).

**SO ORDERED.**